UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WIDERMAN MALEK P.L. et al.,

    Petitioners,

v.                                                    Case No. 6:20-cv-665-Orl-37GJK

JOVITA CARRANZA,
ADMINISTRATOR OF THE UNITED
STATES SMALL BUSINESS
ADMINISTRATION,

    Respondent.

## ORDER

Petitioners move for a preliminary injunction. (Docs. 6, 7 (collectively, "**PI Motion**").) Respondent opposed (Doc. 16), and Petitioners replied (Doc. 17). The Court held a hearing on the PI Motion on June 12, 2020 ("**Hearing**"). (*See* Doc. 18.) On review, the PI Motion is denied.

### I.     BACKGROUND[1]

This mandamus action springs from the global COVID-19 pandemic and the devastating consequences of the economic shutdown that followed. (Doc. 1, ¶¶ 1–2, 73–74.) Recognizing the economic impact of the pandemic, especially on small businesses, Congress launched into action and passed the Coronavirus Aid, Relief, and Economic

---

[1] The facts are taken from Plaintiff's Verified Petition for Writ of Mandamus (Doc. 1), the PI Motion (Docs. 6, 7), and the evidence provided (Doc. 7-1; Docs. 14-1–14-22; Doc. 16-1).

Security Act ("**CARES Act**"). (*See id.* ¶¶ 3–4, 75–76.) The CARES Act added a component to the Economic Injury Disaster Loan ("**EIDL**") program. (*Id.* ¶¶ 5, 80.) Section 1110 of the CARES Act, titled "Emergency EIDL Grants," aimed to provide quick cash relief to small businesses through the U.S. Small Business Administration ("**SBA**"). (*Id.*) It states:

> (1) IN GENERAL
> During the covered period, an entity included for eligibility in subsection (b), including small business concerns, private nonprofit organizations, and small agricultural cooperatives, that applies for a loan under section 636(b)(2) of this title in response to COVID-19 may request that the Administrator provide an advance that is, subject to paragraph (3), in the amount requested by such applicant to such applicant within 3 days after the Administrator receives an application from such applicant.
>
> (2) VERIFICATION
> Before disbursing amounts under this subsection, the Administrator shall verify that the applicant is an eligible entity by accepting a self-certification from the applicant under penalty of perjury . . . .
>
> (3) AMOUNT
> The amount of an advance provided under this subsection shall be not more than $10,000.

15 U.S.C. § 9009(e)(1)–(3).

Enter Petitioners—over fifty small businesses—the unintended yet inevitable economic victims of local governments' efforts to slow the spread of COVID-19 through "stay at home" orders. (*See* Doc. 1, ¶¶ 2, 9–62, 74, 99.) Quickly experiencing the effects of forced closure, Petitioners each requested the SBA provide a $10,000 EIDL grant within three days, which they believed the SBA had to do. (*Id.* ¶¶ 6–8, 72, 80, 86, 89–90, 101–02, 105.) But three days lapsed with no funds. (*Id.* ¶¶ 8, 101–02.) Some Petitioners eventually received $10,000 as requested, others less than $10,000, and others nothing. (*See* Docs. 14-

2–14-22; Doc. 16-1, pp. 24–26; Doc. 19, pp. 2–3.[2]) And Petitioners claim without the $10,000 EIDL grants soon, they are in jeopardy of permanent closure. (Doc. 1, ¶ 99; Docs. 14-2–14-22.)

So Petitioners sued Respondent Jovita Carranza, the SBA Administrator, seeking mandamus relief. (Doc. 1.) Petitioners argue the Court should issue a writ of mandamus to compel Respondent to comply with the CARES Act and immediately provide the requested $10,000 EIDL grants. (*Id.* ¶¶ 89–90, 102, 106–13.) Petitioners also moved for a temporary restraining order and preliminary injunction requiring Respondent to provide the EIDL grants. (Docs. 6, 7; Doc. 8 ("**TRO Motion**").) The Court denied the TRO Motion because of procedural deficiencies and because Petitioners failed to establish they would suffer immediate and irreparable harm before Respondent could be heard. (Doc. 11, pp. 3–5.) The Court took the PI Motion under advisement, set a briefing schedule, and scheduled the Hearing. (*Id.* at 5.) Briefing and oral argument complete (Docs. 6, 7, 16–18), the PI Motion is ripe.

## II.  LEGAL STANDARDS

To obtain a preliminary injunction, the movant must establish: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the

---

[2] During the Hearing, the Court directed the parties to provide an updated list of which Petitioners had received the full $10,000, some but less than $10,000, and no funds. (Doc. 18.) The parties' update revealed 16 Petitioners received $10,000; 20 received less than $10,000; and 17 hadn't received any funds as of June 12, 2020. (*See* Doc. 19, pp. 2–3.)

injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation omitted). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Forsyth Cty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (citation omitted).

### III. ANALYSIS

Petitioners failed to show the extraordinary remedy of preliminary injunctive relief is warranted. Let's start with the threshold question of whether the Court can issue an injunction against the SBA before addressing Petitioners' entitlement to their requested injunctive relief.

#### A. Injunctive Relief Against the SBA

First is whether injunctive relief is available against the SBA given § 634(b)(1) of the Small Business Act. Section 634(b)(1) says the Administrator can

> sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, *injunction*, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property.

15 U.S.C. § 634(b)(1) (emphasis added). Petitioners, relying on non-binding case law, say this doesn't bar injunctive relief here because Petitioners merely seek a Court order requiring Respondent to comply with the CARES Act. (Doc. 7, pp. 8–10; Doc. 17, p. 4.) Respondent counters that the SBA enjoys sovereign immunity and binding authority bars all injunctive relief against the SBA under § 634(b)(1). (Doc. 16, pp. 11–12.) Neither is

wholly correct—the Court can enjoin the SBA when the Administrator exceeds her authority or uses her discretion arbitrarily and capriciously.

Considering the language of § 634(b)(1), some courts have found injunctive relief against the SBA available in limited circumstances regardless of the no-injunction language. *See Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1057 (1st Cir. 1987) (concluding that the no-injunction language is not "a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations"). But the Fifth Circuit, in a binding decision, found § 634(b)(1) barred the plaintiff's injunctive relief request against the SBA. *See Romeo v. United States*, 462 F.2d 1036, 1037–38 (5th Cir. 1972)[3] (finding that the plaintiff's "suit is barred insofar as he seeks injunctive relief"). At issue is *Romeo*'s scope and when, if ever, injunctive relief is available against the SBA.[4]

*Romeo* and its binding progeny cannot mean injunctive relief against the SBA is never available, as Respondent suggests (*see* Doc. 16, pp. 11–12). Neither *Romeo* nor other binding authority barred injunctive relief where the Administrator exceeded authority or used discretion unlawfully. In *Romeo*, the Fifth Circuit addressed a request for specific

---

[3] The decisions of the former Fifth Circuit rendered before October 1, 1981 are binding on this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[4] In later non-binding decisions, the Fifth Circuit and district courts within the Eleventh Circuit have relied on *Romeo* without extensive discussion about § 634(b)(1) to conclude injunctive relief isn't available against the SBA. *See, e.g.*, *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1290 n.6 (5th Cir. 1994); *Prothro v. United States*, 704 F. Supp. 226, 227 (N.D. Ga. 1988), *aff'd*, 864 F.2d 794 (11th Cir. 1988); *Jets Servs., Inc. v. Hoffman*, 420 F. Supp. 1300, 1308–09 (M.D. Fla. 1976).

performance (injunctive relief) against the SBA Administrator following the SBA's allegedly improper denial of a disaster loan. *See* 462 F.2d at 1037. True, the court barred the plaintiff's request based on § 634(b)(1). *Id.* at 1037–38. But that case didn't involve an instance in which the Administrator exceeded authority—just the opposite as the court affirmed "[i]t was within [the Administrator's] discretion, pursuant to SBA policy, to deny a loan to an individual involved with gambling." *Id.* at 1038. So does *Romeo*'s injunction bar apply if the Administrator exceeds lawful authority or acts arbitrarily and capriciously?

A narrow reading of *Romeo*, cabining its scope to when the Administrator acts within her lawful authority and with proper discretion, is supported by another binding Fifth Circuit case, *Expedient Services, Inc. v. Weaver*, 614 F.2d 56 (1980). There, the Fifth Circuit, relying on *Romeo*, found the plaintiff's requested injunctive relief barred by § 634(b)(1). *Id.* at 58. But when considering the plaintiff's proffered authority from other courts suggesting injunctive relief may be available when the Administrator exceeds his authority, the Fifth Circuit didn't turn to *Romeo* to dispense with the issue. *See id.* at 58 n.2. Instead, the court stated, "it is not necessary for us to decide this issue because the Administrator clearly did not exceed his authority." *Id.* Because no binding authority answers this question, this Court may find injunctive relief is available against the Administrator when she exceeds her lawful authority or exercises her discretion arbitrarily and capriciously.

Second, using *Romeo* as a shield against injunctive relief in every circumstance yields an unjust and untenable result. If injunctive relief is never available against the

SBA, there would be no way to constrain acts of the Administrator that exceed her lawful authority or are arbitrary and capricious. A few hypotheticals spotlight this point. What if the Administrator adopted a policy where the SBA only provided emergency CARES Act funds to small businesses owned by men, refusing to provide anything to eligible women-owned businesses? Or if the SBA provided $10,000 grants to small businesses owned by white individuals but only $500 to eligible black-owned businesses? Without available injunctive relief, women-owned and black-owned small businesses faced with impending permanent closure would be without meaningful recourse to salvage their businesses—the very recourse the statute was enacted to provide. This simply cannot be. Injunctive relief must be available against the Administrator if she exceeds her authority or exercises her discretion arbitrarily and capriciously.[5]

---

[5] This tracks the limited circumstances in which other courts have found injunctive relief against the SBA available, after more exhaustive discussions than those in *Romeo* and its progeny. For example, the First Circuit in *Ulstein* considered the origin and purpose of the no-injunction language in § 634(b)(1) and other statutes in which the same language exists, noting "nothing in the language or the legislative history of § 634 suggests that Congress intended to grant the SBA any greater immunity from injunctive relief than that possessed by other governmental agencies." *See* 833 F.3d at 1056–57 (quoting *Cavalier Clothes, Inc. v. United States*, 810 F.2d 1108, 1112 (Fed. Cir. 1987)). From that, the First Circuit concluded:

> The no-injunction language protects the agency from interference with its internal workings by judicial orders attaching agency funds, etc., but does not provide blanket immunity from every type of injunction. In particular, it should not be interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations.

*Id.* at 1057. And the Eastern District of Wisconsin recently noted, in considering a different portion of the CARES Act, that "if provisions such as § 634(b)(1) meant that the agency could never be enjoined, then an agency could adopt unconstitutional policies and

### B. Petitioners' Entitlement to a Preliminary Injunction

Next is whether Petitioners are entitled to their requested preliminary injunction. Here, the analysis begins and ends with whether Petitioners established a substantial likelihood of success on the merits of their claim for mandamus relief. *See Siegel*, 234 F.3d at 1176. They did not.

The Mandamus Act states, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The movant must show: "(1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) 'no other adequate remedy [is] available.'" *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003) (alteration in original) (citation omitted). "[A] writ of mandamus 'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.'" *Id.* (citation omitted). "[M]andamus is an extraordinary remedy which should be utilized only in the clearest and most compelling cases." *Id.* at 1257 (citation omitted).

In determining whether there is a "specific, unequivocal, non-discretionary command" to enforce, courts look to "the text of the applicable statute." *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1379 (M.D. Ga. 2019). In construing statutes, courts "must begin,

---

continue to follow them even after a court declared them unconstitutional." *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, No. 20-C-0601, 2020 WL 2088637, at *4 (E.D. Wis. May 1, 2020).

and often should end as well, with the language of the statute itself." *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002) (citation omitted). This is because courts "presume that Congress said what it meant and meant what it said." *Id.* Let's turn to the statute.

Section 1110 of the CARES Act contains two pertinent provisions. First, an eligible entity "*may request* that the Administrator provide an advance that is, subject to paragraph (3), in the amount requested by such applicant to such applicant within 3 days after the Administrator receives an application from such applicant." 15 U.S.C. § 9009(e)(1) (emphasis added). Second, "[t]he amount of an advance provided under this subsection shall be *not more than* $10,000." *Id.* § 9009(e)(3) (emphasis added). The statute says applicants *may request* the SBA provide up to $10,000 within three days, but it doesn't explicitly require the SBA to provide $10,000—or any money at all—within three days. *See id.*; *see also LIT Ventures, LLC v. Carranza*, No. 2-20-cv-00706-JAD-DJA, 2020 WL 2200845, at *3 (D. Nev. May 5, 2020) (noting that § 1110(e)(1) "tells an applicant what it may do when applying for an EIDL in response to COVID-19," not what the SBA must do). And the "shall be not more than" used in prescribing the amount of an EIDL grant affords the SBA discretion in awarding these advances as Congress only prescribed a cap on the amount rather than directing the SBA provide a specific amount. *See* 15 U.S.C. § 9009(e)(3); *see also LIT Ventures, LLC*, 2020 WL 2200845, at *3–4 (discussing the SBA's discretion in providing emergency grants under the CARES Act).

Contrary to Petitioners' assertions, the CARES Act does not impose a clear, non-discretionary duty on the SBA to award grants in the requested amount within three

days.[6] *See* 15 U.S.C. § 9009(e); *LIT Ventures*, 2020 WL 2200845, at *3 (finding § 1110 of the CARES Act doesn't "prescribe[ ] a mandatory, ministerial duty on the part of the SBA"). So Petitioners have not met their burden of establishing a substantial likelihood of success on their mandamus relief request. *See LIT Ventures*, 2020 WL 2200845, at *4; *see also Cash*, 327 F.3d at 1258 (noting mandamus relief is appropriate "only if the defendant owes him a clear nondiscretionary duty [to act]").

Appreciating the CARES Act affords the Administrator discretion in disbursing EIDL grants, the Court is troubled by her exercise of that discretion. According to Respondent, the SBA's policy is to limit EIDL grants to $1,000 per employee, up to $10,000. (*See* Doc. 16-1, p. 18, ¶ 4; *id.* at 22.) But nothing in § 1110 of the CARES Act reveals Congress intended to tether the EIDL grants to the number of employees. *See* 15 U.S.C. § 9009.[7] And a small business with one or two employees may need a $10,000 emergency EIDL grant as much as, if not more than, a small business with ten or 499 employees. So the Administrator's implementation of a $1,000 per employee limitation may exceed her authority and be arbitrary and capricious—something possibly addressed under the Administrative Procedure Act ("**APA**"). *See* 5 U.S.C. § 706(2) (enumerating when courts

---

[6] Petitioners urge the Court to look beyond the statutory text to letters from members of Congress imploring the Administrator to provide grants in the requested amount within three days. (Doc. 7, pp. 13–16, 18–19.) But Petitioners' reliance on these letters undercuts their mandamus relief claim as it reveals the statute itself does not provide a clear, unequivocal duty for the SBA to provide $10,000 grants in three days. *See Cash*, 327 F.3d at 1257–58.

[7] The only mention of the number of employees is in the definition of "eligible entity," which includes businesses with not more than 500 employees. *See* 15 U.S.C. § 9009(a)(2).

-10-

can "hold unlawful and set aside agency action"); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider."). But Petitioners did not seek relief under the APA. (*See* Doc. 1.) As Petitioners' seek mandamus relief only and have not shown a substantial likelihood of success on their claims, the Court denies the preliminary injunction request.[8]

### IV. CONCLUSION

It is **ORDERED AND ADJUDGED** that Petitioners' Motion for Preliminary Injunction (Doc. 6) is **DENIED** as to Petitioners who received emergency grants of less than $10,000 or no emergency grant and **DENIED AS MOOT** as to Petitioners who received $10,000 grants.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 21, 2020.



ROY B. DALTON JR.
United States District Judge

---

[8] Because Petitioners failed to establish a required element for a preliminary injunction—substantial likelihood of success on the merits—the Court need not address the remaining requisites for injunctive relief. *See Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001). Moreover, as to Petitioners who received $10,000 grants (*see* Doc. 19, p. 2), their preliminary injunctive relief claims are now moot. *See Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (noting a claim is moot "[i]f events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief" (citation omitted)).

Copies to:
Counsel of Record


Copies to:
Counsel of Record

Case 6:20-cv-00665-RBD-GJK   Document 21   Filed 06/22/20   Page 12 of 12 PageID 355

-12-