**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CASE NO. 6:20-cv-665-Orl-37GJK**

CELEBRATION LAW P.A.,
LAND AND SEA SURF, LLC,
SAFARI TRADING LLC,
DMS MOVING SYSTEMS OF ALABAMA, INC.,
JMR BUILDERS, INC.,
BEACHSIDE MARINE, INC.,
99 BOTTLES HOSPITALITY LLC,
KIRK W. KESSEL COMPANIES, INC.,
PAUL MEISSNER
SOUTHERN CLOUD SOLUTIONS CORPORATION,
CASCADE FINANCIAL LLC,
HOSKINS CONSTRUCTION INC.,
THE GATHERING TABLE INC.,
JIMMY'S CIGAR LOUNGE, LLC,
MR & MRS FREDDIE FIX IT, INC.,
JENKINS ARAH CORPORATION,
PARADISE AIR & HEAT LLC,
A PLACE LIKE HOME ALF, INC.,
ROBERT T. SCHROTH P.A.,
TACTICAL AESTHETICS, PLLC,
T-LIGO USA, LLC,
NOVAPRO, INC.,
UBIQUITOUS DESIGNS & RENOVATIONS, INC.,
ROCKIN' RELIX INTERNATIONAL, LLC,
CIBELLI'S LLC,
PAUL BLACKMORE,
SIDELINE SPORTS PHOTOGRAPHY, LLC,
INTERNATIONAL TITLE AND ESCROW COMPANY, LLC,
TITLE SOLUTIONS OF FLORIDA, LLC,
ROBERT ABRAHAM DAVIDOWITZ, LLC,
DR. DIANE M. WALKER, PA,
KATE BLACKMORE,

> Petitioners,

1

vs.

JOVITA CARRANZA, Administrator of the
UNITED STATES SMALL BUSINESS ADMINISTRATION,

Respondent

---

## VERIFIED AMENDED COMPLAINT

---

JAMES IPPOLITI, Esq.
FL Bar No. 102674
MARK WARZECHA, Esq.
FL Bar No. 095779
JEFF IPPOLITI, Esq.
FL Bar No. 095608
SCOTT WIDERMAN, Esq.
FL Bar No. 585823
jim@uslegalteam.com
mfw@uslegalteam.com
scott@uslegalteam.com
jeff@uslegalteam.com
WIDERMAN MALEK P.L.
Attorneys for Petitioners
1990 W. New Haven Ave., Second Floor
Melbourne, FL 32904
Phone:  321-255-2332

## **INTRODUCTION**

1.  On or about March 2020, the United States was struck by the worldwide COVID-19 pandemic.

2.  Consequently, the United States and local governments began issuing "stay at home" orders and forced many businesses to close in order to slow the spread of the COVID-19 virus.

3.  In response, to bolster the economy and assist the affected businesses, Congress presented the Coronavirus Aid, Relief, and Economic Security ("CARES") Act as H.R. 748.

4.  The CARES Act was signed into law by President Trump on March 27, 2020.

5.  One of the key components of the CARES Act was codified in the first section of the CARES Act, §1110 "Emergency EIDL Grants." As a new component of the existing Economic Injury Disaster Loan ("EIDL") program, this section provided for quick cash relief to be provided directly to small businesses by the Small Business Administration (SBA). Specifically, the SBA was required to provide a grant, in any amount requested by a small business applicant, up to $10,000, within three days of the date of the application.

6.  Administrator Carranza is without authority to change the express terms of the CARES Act which requires an initial $10,000 grant to be disbursed within three days for any applicant who made such a request.

7.   All of the named Petitioners have individually made a request for a $10,000 Emergency EIDL Grant within the EIDL application.

8.   None of the named Petitioners have been provided a $10,000 Emergency EIDL Grant.

## **PARTIES**

9.   CELEBRATION LAW P.A., is a professional association organized and incorporated under the laws of Florida.

10. LAND AND SEA SURF, LLC, is a limited liability company organized and incorporated under the laws of Florida.

11. SAFARI TRADING LLC, is a limited liability company organized and incorporated under the laws of Florida.

12. DMS MOVING SYSTEMS OF ALABAMA, INC., is a corporation organized and incorporated under the laws of Michigan.

13. JMR BUILDERS, INC., is a corporation organized and incorporated under the laws of Florida.

14. BEACHSIDE MARINE, INC., is a corporation organized and incorporated under the laws of Florida.

15. 99 BOTTLES HOSPITALITY LLC, is a limited liability company organized and incorporated under the laws of Florida.

16. KIRK W. KESSEL COMPANIES, INC., is a corporation organized and incorporated under the laws of Florida.

17. PAUL MEISSNER, is an individual residing in the State of New York doing business as CMJ CONTRACTING AND PROPERTY MAINTENANCE.

18. SOUTHERN CLOUD SOLUTIONS CORPORATION, is a corporation organized and incorporated under the laws of Florida.

19. CASCADE FINANCIAL LLC, is a limited liability company organized and incorporated under the laws of Florida.

20. HOSKINS CONSTRUCTION INC., is a corporation organized and incorporated under the laws of Florida.

21. THE GATHERING TABLE INC., is a corporation organized and incorporated under the laws of Florida.

22. JIMMY'S CIGAR LOUNGE, LLC, is a limited liability company organized and incorporated under the laws of Florida.

23. MR & MRS FREDDIE FIX IT, INC., is a corporation organized and incorporated under the laws of Florida.

24. JENKINS ARAH CORPORATION, is a corporation organized and incorporated under the laws of California.

25. PARADISE AIR & HEAT LLC, is a limited liability company organized and incorporated under the laws of Florida.

26. A PLACE LIKE HOME ALF, INC., is a corporation organized and incorporated under the laws of Florida.

27. ROBERT T. SCHROTH P.A., is a professional association organized and incorporated under the laws of Florida.

28. TACTICAL AESTHETICS, PLLC, is a professional limited liability company organized and incorporated under the laws of Florida.

29. T-LIGO USA, LLC, is a limited liability company organized and incorporated under the laws of Florida.

30. NOVAPRO, INC., is a corporation organized and incorporated under the laws of Florida.

31. UBIQUITOUS DESIGNS & RENOVATIONS, INC., is a corporation organized and incorporated under the laws of Florida.

32. ROCKIN' RELIX INTERNATIONAL, LLC, is a limited liability company organized and incorporated under the laws of Florida.

33. CIBELLI'S LLC, is a limited liability company organized and incorporated under the laws of Florida.

34. PAUL BLACKMORE, is an individual residing in the State of Massachusetts.

35. SIDELINE SPORTS PHOTOGRAPHY, LLC, is a limited liability company organized and incorporated under the laws of Illinois.

36. INTERNATIONAL TITLE AND ESCROW COMPANY, LLC, is a limited liability company organized and incorporated under the laws of Florida.

37. TITLE SOLUTIONS OF FLORIDA, LLC, is a limited liability company organized and incorporated under the laws of Florida.

38. ROBERT ABRAHAM DAVIDOWITZ, LLC, is a limited liability company organized and incorporated under the laws of Florida.

39. DR. DIANE M. WALKER, PA, is a professional association organized and incorporated under the laws of Florida.

40. KATE BLACKMORE, is an individual residing in the State of Massachusetts.

41. JOVITA CARRANZA, is Administrator of the UNITED STATES SMALL BUSINESS ADMINISTRATION.

## JURISDICTION AND VENUE

42. This Court has original jurisdiction over this action pursuant to 28 U.S. Code § 1361.

43. Venue in the Middle District of Florida is proper because it is the District in which Respondent refused to perform the duty enjoined upon her by the Congress of the United States.

## STATUTORY BACKGROUND

44. The Coronavirus Aid, Relief, and Economic Security Act (H.R. 748), commonly referred to as the CARES Act, is a law meant to address the economic fallout of the 2020 coronavirus pandemic in the United States ("CARES Act").

45. In its original form, the CARES Act was introduced in the United States Congress as H.R. 748 (Middle Class Health Benefits Tax Repeal Act of 2019) by Joe Courtney (D–CT) on January 24, 2019.

46. The initial bill was amended before it was passed with overwhelming bipartisan support.

47. As a result of bipartisan negotiations, the bill grew to $2 trillion in the version unanimously passed by the Senate on March 25, 2020.

48. On March 26, 2020, the bill was passed in the House of Representatives via voice vote.

49. On March 27, 2020, the bill was signed into law by President Donald Trump.

50. Section 1110(e) of the CARES Act, entitled *EMERGENCY GRANT*, expressly states:

> (1) IN GENERAL.—During the covered period, an entity included for eligibility in subsection (b), including small business concerns, private nonprofit organizations, and small agricultural cooperatives, that applies for a loan under section 7(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)) in response to COVID–19 may request that the Administrator provide an advance that is, subject to paragraph (3), ***in the amount requested by such applicant to such applicant within 3***

***days after the Administrator receives an application from such applicant.*** (emphasis added).

(2) VERIFICATION.—Before disbursing amounts under this subsection, the Administrator shall verify that the applicant is an eligible entity by accepting a self-certification from the applicant under penalty of perjury pursuant to section 1746 of title 28 United States Code.

(3) AMOUNT.—The amount of an advance provided under this subsection shall be not more than $10,000.00.

51. Section 1114 of the CARES Act, entitled *EMERGENCY RULEMAKING AUTHORITY*, expressly states:

Not later than 15 days after the date of enactment of this Act, the Administrator ***shall*** issue regulations to carry out this title and the amendments made by this title without regard to the ***notice requirements under section 553(b) of title 5, United States Code.***(emphasis added).

52. The Administrative Procedure Act ("APA") was enacted June 11, 1946 and governs the way in which administrative agencies of the federal government of the United States, including the Small Business Administration ("SBA") may propose and establish regulations.

## STATEMENT OF FACTS

53. On or about March 2020, the United States was struck by the worldwide COVID-19 pandemic.

54. Consequently, the United States and local governments began issuing "stay at home" orders and forced many businesses to close, in order to slow the spread of the COVID-19 virus.

55. In response, to bolster the economy and assist the affected businesses, Congress presented the Coronavirus Aid, Relief, and Economic Security ("CARES") Act as H.R. 748.

56. The CARES Act was signed into law by President Trump on March 27, 2020.

57. The United States Treasury states on its website, "[t]he CARES Act provides *fast and direct* economic assistance for American workers, families, and small businesses, and preserves jobs for our American industries."

58. The SBA boasted on its website that the Economic Injury Disaster Loan ("EIDL") "provides the necessary working capital to help small businesses survive until normal operations resume after a disaster."

59. Following the enactment of the CARES Act, Administrator Carranza issued the following statement: *"President Trump acted swiftly and in a bipartisan manner to support our nation's 30 million small businesses, which employ nearly half of the nation's workforce. Under the CARES Act, the President took historic action, making available hundreds of billions of dollars in an expedited manner to provide immediate financial relief for small business owners across the country. Our small businesses are the economic engines of their communities, and the SBA is ready to provide them with the support they need to remain open and keep their workers employed. With our whole-of-government approach led by the President, we are*

*providing small businesses with the resources they need to get them through this unprecedented time."*

60. One of the key components of the CARES Act was codified in the first section, §1110 "Emergency EIDL Grants." As a new component of the existing Economic Injury Disaster Loan ("EIDL") program, this section provided for quick cash relief to be provided directly by the Small Business Administration ("SBA") to small businesses. Specifically, the SBA was required to provide grants in any amount requested by a small business applicant, up to $10,000, within three days of the applying.

61. The purpose of the EIDL grant program is to provide businesses with an almost immediate infusion of $10,000 capital, to pay bills and keep the business afloat until the EIDL loan was funded. As stated in the letter from Congressman Deutch to Administrator Carranza, *"The intent of the three-day provision is to provide a critical source of funding to bridge the time between a small business submitting an EIDL application and the business receiving approval of their loan application…This $10,000 is a critical funding bridge for small businesses in the present economic climate. Indeed, **Congress has required in law that this funding be provided within three days of the request.**" [emphasis added]* (Exhibit A, ⁋ 4, Declaration of James Ippoliti in Support of Petitioners' Verified Amended Complaint (the "Ippoliti Declaration")).

11

62. Based on the express language of the CARES Act, Petitioners depended on receiving the $10,000 grant within three days from the submission of their application and request, in order for their businesses to survive.

63. The EIDL grant and loan was to be used specifically for expenses that were exclusive of the expenses that could be covered by the other business stimulus program provided for within the CARES Act, such as the Payroll Protection Plan ("PPP").

64. The PPP provides 10 weeks of payroll support. For the Petitioners businesses, and many other businesses that have been forced to close due to COVID-19 and are required to remain closed by government order, the PPP will not provide the support required for the business to survive. As stated by more than 100 members of Congress in an April 16 letter to Administrator Carranza, *"[m]any of these businesses and other organizations need EIDL funds to supplement their Paycheck Protection Program (PPP) loan, are not good candidates for the PPP due to its requirements or are not eligible for that program at all."* (Ippoliti Declaration, ¶ 5).

65. Early initial applicants for the EIDL program were told via email that the applicant was required by the SBA to reapply online utilizing the new SBA "streamlined application" as of March 30, 2020. The email assured the businesses that applied prior to March 30, 2020 that "[a]pplying for the Advance will not impact

the status or slow your existing application." That statement is patently false. (Ippoliti Declaration, ⚏ 6).

66. On April 2, 2020, just six days after the CARES Act was signed into law, members of Congress wrote to SBA Administrator Carranza, already expressing deep concern as to how Administrator Carranza was mishandling the mandates of Congress and her duties under the CARES Act.  Specifically, the Congress members asked Administrator Carranza, "*[t]he CARES Act included a requirement that a $10,000 grant be awarded within 3 days of an application to the SBA's Economic Injury Disaster Loan program to help cover operating expenses while waiting for the loan processing. Are SBA staff prepared to fulfill this requirement?*" (Ippoliti Declaration, ⚏ 7).

67. In complete defiance of the law and the specific directive of Congress, and without discretionary authority to do so, Administrator Carranza did not provide the $10,000 initial grant to the applicants who expressly requested said grant within their applications.

68. On April 10, 2020, members of Congress sent another letter to SBA Administrator Carranza, again expressing concern and chastising Administrator Carranza's failure to follow the law. The letter states, "*[t]urning to the EIDL grants, which Congress intended to provide a quick infusion of cash to help small businesses pay their rent and other bills, SBA has failed to issue final guidance and award*

13

*grants in a manner consistent with Congressional intent. The SBA has metered the amount of the EIDL grant to $1,000 per employee, even though Congress specifically stated that the applicant, not the agency, has the sole authority to determine how much grant money they receive up to $10,000.*" [Emphasis added.] (Ippoliti Declaration, ⁋ 8).

69. Five days later, on April 15, again in defiance of Congress and the law, and without discretionary authority to do so, the SBA sent an email to all applicants expressly stating *"Dear Applicant, On March 29, 2020, following the passage of the CARES Act, the SBA provided small business owners and non-profits impacted by COVID-19 with the opportunity to obtain up to a $10,000 Advance on their Economic Injury Disaster Loan (EIDL). The Advance is available as part of the full EIDL application and will be transferred into the account you provide shortly after your application is submitted. **To ensure that the greatest number of applicants can receive assistance during this challenging time, the amount of your Advance will be determined by the number of your pre-disaster (i.e., as of January 31, 2020) employees. The Advance will provide $1,000 per employee up to a maximum of $10,000."*** (Ippoliti Declaration, ⁋ 9).

70. The April 16, 2020 letter from more than 100 members of Congress to Administrator Carranza expressed concern over Administrator Carranza's unauthorized and unilateral modification to the express language of the CARES Act.

As stated in the letter, *"...many small businesses simply cannot weather the COVID-19 crisis if initial distributions are limited to as little as $15,000 for loans and grants are rationed by number of employees."* (Ippoliti Declaration, ℙ 5).

71. On April 16, 2020 the SBA posted on the EIDL page of its website *"[a]pplicants who have already submitted their applications will continue to be processed on a first-come, first-served basis."* This statement is a patently false. (Ippoliti Declaration, ℙ 10).

72. Weeks after applying for the EIDL loan and the $10,000.00 grant which was required to be paid within three days, small business owner applicants had zero correspondence from the SBA - not even a confirmation email.

73. Without the $10,000.00 Emergency EIDL Grant that Administrator Carranza was required to provide each Petitioner within three days of application and request of such Grant, the Petitioner's businesses, along with many other small businesses in the United States, are in jeopardy of closing permanently. As stated by Congress members in the April 16, 2020 letter to Administrator Carranza, *"...we are concerned that many small businesses cannot wait much longer to receive EIDL funds from the federal government*." (Ippoliti Declaration, ℙ 5).

74. The failure of Administrator Carranza to comply with the express terms of the CARES Act and the specific directives of Congress could cost millions of American jobs, the exact jobs the CARES Act was enacted to protect. As stated in

the letter from Congressman Deutch to Administrator Carranza, *"Small businesses that are applying for the EIDL and also requesting an immediate $10,000 within three days of submitting their application are in dire financial need…Receiving the $10,000 payment can keep a business from permanently closing."* (Ippoliti Declaration, ¶ 4).

75. Each of the named Petitioners have individually requested the $10,000 initial grant as provided for within the EIDL application, as drafted by the SBA.

76. None of the named Petitioners have been provided a $10,000.00 initial grant as requested by each Petitioner within its application.

77. Without authorization, in direct conflict with the CARES Act and the intent of Congress, and in violation of the Administrative Procedures Act ("APA"), the Respondent implemented a new rule which tethered the amount of the Emergency EIDL Grant to the number of employees of the applicant's business, metering the Emergency EIDL Grant to "$1,000 per employee."

78. Nothing in §1110 of the CARES Act reveals Congress intended to tether the EIDL grants to the number of employees.

79. The SBA did not make any announcement or publication of it's new "$1,000 per employee" rule, nor did the SBA follow the requirements of the APA when it instituted the new rule.

16

80. SBA's unilateral and unpublished decision and actions to meter the Emergency EIDL Grant based on $1,000 per employee completely disregards the CARES Act and Congressional intent, violates the APA, and is arbitrary, capricious and an abuse of discretion.

## CAUSES OF ACTION

### COUNT I

### RESPONDENT HAS VIOLATED THE ADMINISTRATIVE PROCEDURES ACT

81. Petitioners repeat and reallege paragraphs 1-80 hereof, as if fully set forth herein.

82. The APA requires agencies, including the SBA, to follow specific procedures when making rules. The SBA did not follow these procedures when making the new "$1,000 per employee" Emergency EIDL Grant rule, in violation of the APA §552 and §553(b).

83. The APA defines "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefore or of valuations, costs, or accounting, or practices bearing on any of the foregoing" 5 U.S.C. 551(4).

17

84. The "$1,000 per employee" rule is being utilized by the SBA in the implementation of Emergency EIDL Grants as provided for in §1110 of the CARES Act, which is an act of Congress. Accordingly, the "$1,000 per employee" rule is a substantive rule.

85. The CARES Act §1114 affirmatively requires the Respondent to issue regulations for the administration of the small business assistance programs contained in the CARES Act, including the Emergency EIDL Grant program, within 15 days of enactment. Only by issuing such regulations within 15 days could the SBA avoid the publication requirements of §553(b) of the APA:

> Not later than 15 days after the date of enactment of this Act, the Administrator **shall** issue regulations to carry out this title and the amendments made by this title without regard to the notice **requirements** under section 553(b) of title 5, United States Code. [Emphasis added.]

86. Although the Respondent promulgated rules for the Paycheck Protection Program ("PPP") according to the terms of §1114 of the CARES Act, she failed to publish any rules associated with the COVID-19 Emergency EIDL Grant or EIDL loan program as required by §1114.

87. Since the Respondent did not issue any rules associated with the COVID-19 Emergency EIDL Grant or EIDL loan program as required by §1114 of the CARES Act, the SBA was therefore required to follow the notification procedures of the APA, 5 U.S.C. 553(b).

88. The Respondent did not, and has not, followed the notification requirements of §553(b) of the APA when she instituted the "$1,000 per employee" rule.

89. The SBA instituted "$1,000 per employee" rule constitutes a rule of general applicability to all §1110 Emergency EIDL Grant applicants, and is therefore also required to be published by 5 U.S.C. §552 (a)(l)(D). Additionally, the rule can only exist as an aspect of the Respondent's interpretation of §1110, and as an interpretation of general applicability, it must be published as required by§552 (a)(l)(D).

90. The unpublished "$1,000 per employee" rule is exactly the type of ad hoc decision making that the Administrative Procedure Act is designed to prevent.

91. The SBA failed to follow the notification procedures outlined by the APA, 5 U.S.C §552 and §553(b) when instituting the new "$1,000 per employee" rule, the Petitioners have been adversely affected by this rule, and the rule must be rescinded.

92. While validly promulgated regulations may be entitled to deference, the rule must still be consistent with Congressional purpose. As stated by more than 150 Congress members in nine letters to the Administrator, the new "$1,000 per employee" rule is in complete opposition to, and inconsistent with, Congressional purpose. Additionally, the SBA did not promulgate - validly or otherwise - any such rules related to the Emergency EIDL Grant or EIDL loan program.

93. To be entitled to deference, the agency's construction must also be a reasonable interpretation of the statute.

94. There is no reasonable interpretation of the CARES Act §1110 that would lead to the Respondent having discretion to tether the amount of the Emergency EIDL Grant to the number of employees of the applicant. Such language does not exist in the statute, and any such reading would result in the Administrator acting in a Legislative capacity.

95. The APA provides that courts must "hold unlawful and set aside" agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" 5 U.S.C. §706(2)(C).

96. Nowhere in the CARES Act does it mention tethering the amount of the Emergency EIDL Grant to the number of employees of the applicant, and accordingly, the Respondent exceeded her authority when implementing the "$1,000 per employee" rule.

97. The APA also provides that courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

98. Nowhere in the CARES Act does it mention tethering the amount of the Emergency EIDL Grant to the number of employees of the applicant. Accordingly, the "$1,000 per employee" rule implemented by the SBA relied on factors which

Congress had not intended it to consider. Therefore, the rule is arbitrary and capricious.

99. The economic loss of a business cannot be reasonably measured by, or directly related to, the number employees of that business. A small business with one or two employees may need a $10,000 Emergency EIDL Grant as much as, if not more than, a small business with ten or 499 employees. Accordingly, there is no rational basis for tethering the amount of the Emergency EIDL Grant to the number of employees of the applicant, and therefore the "$1,000 per employee" rule is arbitrary and capricious.

100.    Even if the Respondent had followed the requirements of the APA in implementing the new "$1,000 per employee" rule, and even if this rule was not arbitrary and capricious, the rule could still not be applied retroactively. Under the APA, rules are defined as agency statements having "general or particular applicability and *future effect*". [Emphasis added.] 5 U.S.C. § 551(4).

101.    Rules promulgated through notice-and-comment rulemaking under the APA have prospective application only.

102.    Additionally, Congress does not provide administrative agencies authority to create rules that have retroactive effect.

103.    The U.S. Supreme Court has established a long standing presumption against retroactive rules, as such rules would generally result in unjust results.

21

Retroactive legislation is unfair because it deprives citizens of notice and can create economic uncertainty. Accordingly, the applicability of administrative rules and regulations are limited to the time following their passage into law.

## CONCLUSION

For the reasons set forth above, Petitioners respectfully request that the United States District Court for the Middle District of Florida enter Judgment and compel the SBA Administrator to issue $10,000.00 grants to each and every Petitioner within three days of said Petitioner's application date.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioners respectfully request that a judgment be entered herein as follows:

A.  Compelling the Respondent to immediately issue initial grants in the full amount of $10,000 to each and every Petitioner pursuant to the express terms of the CARES Act;

B.  Void the "1,000 per employee" rule as a violation of the Administrative Procedures Act.

C.  Granting Petitioner its costs and expenses incurred in this action; and

D.  Granting such other and further relief as the Court deems just and proper.

Dated:        July 14, 2020

/s/ James Ippoliti
JAMES IPPOLITI, Esq.
FL Bar No. 102674
MARK WARZECHA, Esq.
FL Bar No. 095779
JEFF IPPOLITI, Esq.
FL Bar No. 095608
SCOTT WIDERMAN, Esq.
FL Bar No. 585823
jim@uslegalteam.com
mfw@uslegalteam.com
jeff@uslegalteam.com
scott@uslegalteam.com
WIDERMAN MALEK P.L.
Attorneys for Petitioners
1990 W. New Haven Ave., Second Floor
Melbourne, FL 32904
Phone:  321-255-2332

## **VERIFICATION**

STATE OF FLORIDA           )

                                   )

COUNTY OF OSCEOLA   )

James Ippoliti, being duly sworn, deposes and says:
1. I am an equity partner in the law firm Celebration Law P.A.
2. I have read the foregoing **amended complaint** and its factual contents are true to my personal knowledge, except as to those matters alleged therein to be upon information and belief, and as to those matters, I believe them to be true.

_____ ,ESQ.

James Ippoliti, Esq./ Shareholder, Partner

Sworn to before me this
___9ᵗʰ___ day of July 2020

_Bianca Ramos_
Notary Public

Bianca Ramos
Comm. #GG969154
Expires: March 12, 2024
Bonded Thru Aaron Notary

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system. I sent copies of this filing to the Respondent via US Mail and Certified Mail, return receipt requested.

Dated:        July 14, 2020

> _/s/ James Ippoliti_
> JAMES IPPOLITI, Esq.
> FL Bar No. 102674
> MARK WARZECHA, Esq.
> FL Bar No. 095779
> JEFF IPPOLITI, Esq.
> FL Bar No. 095608
> SCOTT WIDERMAN, Esq.
> FL Bar No. 585823
> jim@uslegalteam.com
> mfw@uslegalteam.com
> jeff@uslegalteam.com
> scott@uslegalteam.com
> WIDERMAN MALEK P.L.
> Attorneys for Petitioners
> 1990 W. New Haven Ave., Second Floor
> Melbourne, FL 32904
> Phone:  321-255-2332