UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CELEBRATION LAW, P.A., *et al.*

        Petitioners,

v.                                      CASE NO: 6:20-cv-665-Orl-37GJK

JOVITA CARRANZA, ADMINISTRATOR
OF THE UNITED STATES SMALL
BUSINESS ADMINISTRATION,

        Respondent.

_____/

## RESPONSE IN OPPOSITION TO PETITIONERS' SECOND MOTION FOR PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

I.     Introduction………………………………………………………………..…1

II.    Factual Background………………………………………………………….2

III.   Legal Standards…………………………………………………………..…7

IV.   Argument………………………………………………………………..…8

      A. Petitioners cannot show a substantial likelihood of success…………….….8

          1.  Sovereign immunity…………………………………………………..9

              a.  Section 634(b)(1) bars Petitioners' claims…………………………..…10

              b.  The SBA's action is committed to agency discretion by law………….13

          2.  Even if Petitioners' APA claims could proceed,
              Petitioners cannot show a substantial likelihood
              of success on their merits………………………………………….18

              a.  The policy is not in excess of statutory authority
                  (Section 706(2)(C))…………………………………………….19

              b.  The policy is not arbitrary or capricious
                  (Section 706(2)(A))…………………………………………….21

              c.  Lack of publication did not cause harm to Petitioners,
                  nor was publication required……………………………….24

          3.  Even if Petitioners could demonstrate a likelihood of
              success on the merits of their claims, they would not
              be entitled to payment of $10,000……………………………...26

      B. Petitioners cannot show irreparable harm will occur
         unless the Court enters a preliminary injunction………………….….28

      C. The balance of equities and public interest do not favor
         the grant of a preliminary injunction here……………………………34

V.    Conclusion…………………………………………………………..…35

Respondent, Jovita Carranza, Administrator of the United States Small Business Administration ("SBA"), files this response in opposition to Petitioners' second motion for a Preliminary Injunction.   In support of this response, Respondent submits the following memorandum of points and authorities, declarations of Eric N. Wall, Tami L. Perriello, James E. Rivera, and submitted exhibits.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     Introduction**

Under the Coronavirus Aid, Relief, and Economic Stimulus ("CARES") Act, Pub. L. 116-136, 134 Stat. 281, the SBA has provided emergency grants to small businesses ("EIDL Advances") by calculating $1,000 per employee, up to a maximum of $10,000.   Petitioners previously filed a petition for mandamus relief and a related motion for preliminary injunction claiming entitlement to the maximum EIDL Advance on the basis of the statutes' language, despite not having 10 or more employees. However, this Court denied their request, holding that the CARES Act provided the SBA with some discretion on how to implement the EIDL Advance portion of the statute, and thus the Court could not compel the SBA to pay each of the Petitioners the maximum permissible Advance of $10,000.   Doc. 21 at 9.   Petitioners subsequently amended their complaint asserting claims under the Administrative Procedure Act ("APA") that the method the SBA chose to exercise its discretion was arbitrary and capricious and in excess of the SBA's authority, and claiming that the SBA's failure to publish the policy in the Federal Register entitles them to relief.   Doc. 25.   Those issues are now before the Court in Petitioners' second motion for preliminary injunction.

However, the motion should be denied.  Petitioners cannot show a substantial likelihood that they will succeed on their APA claims.  Petitioners will have to overcome several hurdles to do so.  First, this Court lacks the power to review the policy under the APA (1) because of the bar on injunctive relief contained in Section 634(b)(1) of the Small Business Act, and (2) because the action is one committed to agency discretion by law.  Second, the policy is not in excess of the SBA's authority under the CARES Act or the Small Business Act, nor is the action arbitrary and capricious.  Third, Petitioners' claim regarding publication in the Federal Register must fail because they cannot establish either the requisite causation, or that the policy must have necessarily been published in the Federal Register in the first instance.  Fourth, because this is an action for preliminary relief under the APA, Petitioners cannot actually obtain an order form this Court that the SBA preliminarily pay them the maximum amount of the EIDL Advance, rather, the only relief they can obtain on this motion if they are successful is to enjoin the application of the $1,000 per employee policy during the pendency of this case.  Finally, even if Petitioners could demonstrate a substantial likelihood of success on the merits, they cannot establish the other necessary factors of irreparable harm, or that the requested relief is in the public interest.

## II.    Factual Background[1]

The declared policy of the Government under the Small Business Act, 15 U.S.C. §§ 631 *et seq.*, is to "aid, counsel, assist, and protect, insofar as is possible, the interests

---

[1] Given the parties have already extensively briefed the facts regarding the SBA and the CARES Act, *see* Docs. 7, 16, 17, the SBA will limit its recitation here to those facts that are of particular import to the issues before the Court as well as any pertinent factual updates.

of small-business concerns," in order to preserve the system of free competitive enterprise that is "essential" to the economic well-being and security of the Nation. 15 U.S.C. § 631(a).  To promote that important national objective, Congress created the SBA, under the management of a single Administrator, *id.* § 633(a), (b)(1), who is given "extraordinarily broad powers" under section 7(a) of the Act, 15 U.S.C. § 636(a), to provide a wide variety of technical, managerial, and financial assistance to small-business concerns.  *See SBA v. McClellan*, 364 U.S. 446, 447 (1960); *see generally* 15 U.S.C. § 636(a) (describing numerous varieties of general small-business loans the Administrator is "authorized" and "empowered" to make); 13 C.F.R. § 120.1.  In the performance of these authorized functions, the SBA Administrator is further empowered to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and in addition to "take any and all actions ... [that] [she] determines . . . are necessary or desirable in making . . loans." 15 U.S.C. § 634(b)(6), (7).  As part of this authority, the SBA Administrator administers an Economic Injury Disaster Loan ("EIDL") Program.  *See* 15 U.S.C. 636(b), (c), (f); 13 C.F.R. § 123.300, *et seq.*; 61 Fed. Reg. 3304 (Jan. 31, 1996), *as amended.*

On March 27, 2020, President Trump signed into law the CARES Act, passed by Congress to provide an unprecedented package of emergency economic assistance and other support to help individuals, families, businesses, and health-care providers cope with the enormous economic and public health crises triggered by the worldwide coronavirus (COVID-19) pandemic.  *See Profiles, Inc. v. Bank of Am. Corp.*, No. CV SAG-20-0894, 2020 WL 1849710, at *1 (D. Md. Apr. 13, 2020).

Among other things, the CARES Act amended section 7(a) of the Small Business

Act and provided new measures to address the COVID-19 crisis including Paycheck

Protection Program ("PPP") loans, SBA Debt Relief, and EIDL Advances. *See*

https://www.sba.gov/funding-programs/loans/coronavirus-relief-options.

The relevant portion of the CARES Act provides:

(1) IN GENERAL.—During the covered period, an entity
included for eligibility in subsection (b), including small business
concerns, private nonprofit organizations, and small agricultural
cooperatives, that applies for a loan under section 7(b)(2) of the Small
Business Act (15 U.S.C. 636(b)(2)) in response to COVID–19 may request
that the Administrator provide an advance that is, subject to paragraph
(3), in the amount requested by such applicant to such applicant within 3
days after the Administrator receives an application from such applicant.

(2) VERIFICATION.—Before disbursing amounts under this
subsection, the Administrator shall verify that the applicant is an eligible
entity by accepting a self-certification from the applicant under penalty of
perjury pursuant to section 1746 of title 28 United States Code.

(3) AMOUNT.—The amount of an advance provided under this
subsection shall be not more than $10,000.

CARES Act § 1110(e)(1)-(3).

Congress initially appropriated $10 billion dollars for the EIDL Advances.

CARES Act, Pub. L. 116-136, 134 Stat. 281, § 1100(e)(7) (Mar. 27, 2020). Due to the

significant number of applicants for the program, *see infra*, and in order to get assistance

to as many of the applicants as possible using a method that would not unnecessarily

slow down the process, the SBA used its discretion to implement a policy to distribute

the EIDL Advances in the amount of $1,000 per employee.[2]  *See* Ex. A to 1st Perriello

Decl. (Butler Memo); 3rd Perriello Decl. ¶¶ 5-7.  As explained by the Administrator,

> The EIDL advance administration was based on the number of applications that were, again, in the queue applying for the advance and we based it on $1,000 per employed, it wasn't just an arbitrary number, it was a well assessed and analyzed strategy.  It was discussed with members of the Senate Small Business Committee.  We had advised them that in order to cover the number of applicants, the number of small businesses that were applying for the advance, we needed to do something so that many more people would receive the funds.  The average for both the agriculture and as well as normal businesses were about three employees per business.

July 17, 2020 Congressional Testimony of Administrator Carranza (at 1:51:15),

available at https://youtu.be/UHbHPs9Jn5w.

After the CARES Act was signed into law on March 27, 2020, the SBA and a

contractor prepared a computer system ("System") to process EIDL applications and

Advance requests, and the System began processing applications on April 7, 2020 in

small batches.  The System ramped up to full capacity by April 16, 2020, by which time

approximately 3.79 million submitted applications were awaiting processing in the

System.  *See* Wall Decl. ¶¶ 3-8.[3]  As of July 15, 2020, the System had processed approvals

for 5,781,390 applications, and paid or obligated the entire $20 billion appropriation.

Ex. 6, available at https://www.sba.gov/sites/default/files/2020-07/EIDL%

20COVID-19%20Advance%207.15.20-508.pdf; 3rd Perriello Decl. ¶  8; Ex. 7, SBA Press

---

[2] If the full $10,000 per applicant was provided, then the fund would have been depleted after the first 1 million applicants received the advance.  Congress eventually increased this appropriation to $20 billion. *See LIT Ventures, LLC*, 2020 WL 2200845, at *1 (citing 15 U.S.C. § 9009(e)(7)).

[3] The Wall and 1st Perriello declarations (Exs. 1 & 2) have been used in two other cases, thus they contain some information that is irrelevant to the issues a hand here.

Release No. 20-56 (7/11/20), *available at* https://www.sba.gov/about-sba/sba-newsroom/press-releases-media-advisories/sba-provided-20-billion-small-businesses-and-non-profits-through-economic-injury-disaster-loan.[4]

According to Petitioners, they filed applications for EIDLs and Advances at a variety of times beginning on March 30, 2020, through April 13, 2020 (*see* Docs. 27-7, -17). Petitioners assert that they asked for the maximum Advance allowed by the CARES Act, $10,000; however, none of the remaining Petitioners received an EIDL Advance in the maximum amount of $10,000. *See* Doc. 19; 2nd Perriello Decl. ¶ 4; 3rd Perriello Decl. ¶ 4. Eighteen of the Petitioners' disaster loans were funded prior to the filing of the amended complaint and present motion. *See* Rivera Decl. ¶ 4.[5] Two more are nearly funded. *Id.* at ¶ 5. The EIDL Advance is included within the total amount of the loan as it is merely an "advance" on the loan itself,[6] CARES Act § 1110(e)(1), so at this point each of the seventeen entities (and soon the other two) has the entire amount of money they would be entitled to irrespective of this Courts' rulings. Three Petitioners affirmatively told the SBA they were no longer interested in pursuing the disaster loan, and five simply made no effort to obtain the loan after the initial application. *Id.* at ¶¶ 6-7. Four remaining Petitioners pursued the disaster loans but their applications were ultimately denied. *Id.* at ¶ 8.

---

[4] A very small amount of those funds—only a fraction of one percent—have been returned to SBA, and SBA is currently in the process of determining the appropriate action to be taken regarding those returned funds. 3rd Perriello Decl. ¶ 8.

[5] Safari Trading LLC was inadvertently left off of the Rivera Declaration; however, its EIDL for $51,000 was funded on May 16, 2020.

[6] Although a party need not repay the Advance if it is not ultimately approved for the EIDL. CARES Act § 1110(e)(5).

### III.   Legal Standards

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); *Café 207, Inc. v. St. Johns Cnty.*, 989 F.2d 1136, 1137 (11th Cir.1993).   To obtain a preliminary injunction, the movant must sufficiently establish that (1) "it has a substantial likelihood of success on the merits;" (2) "irreparable injury will be suffered unless the injunction issues;" (3) "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party;" and (4) "the injunction would not be adverse to the public interest." *Forsyth Cty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*)). The final two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). If Petitioners fail to carry their burden as to any of these elements the Court must deny the motion. *Café 207, Inc.*, 989 F.2d at 1137.

"A preliminary injunction is typically prohibitive in nature if it seeks to maintain the status quo by prohibiting a party from taking certain action pending resolution of the case.  But when the injunction would force a party to act, and not simply maintain the status quo, it becomes mandatory." *FHR TB, LLC v. TB Isle Resort, LP.*, 865 F. Supp. 2d 1172, 1192 (S.D. Fla. 2011) (citing *Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1295-96 (M.D. Fla. 2010)).  Here Petitioners seek both a prohibitive injunction – by requesting the Court enjoin SBA from using its $1,000 per employee policy, and a mandatory injunction – where they ask for an order requiring the SBA to pay each Petitioner $10,000.  Mandatory preliminary injunctions are particularly disfavored. *See OM Group,*

*Inc. v. Mooney*, No. 2:05CV546FTM33SPC, 2006 WL 68791, *8 (M.D. Fla. Jan. 11, 2006) (citing *Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958[7])).   Accordingly, Petitioners face a heightened burden as to that aspect of their requested relief.  *King Ranch, Inc. v. King Ranch Contractors, LLC*, No. 6:12-CV-597-ORL-37, 2013 WL 2371246, at *4 (M.D. Fla. May 30, 2013).

In addition, when reviewing a request for mandatory preliminary injunction under the APA, Petitioners must meet the same standards as they would to obtain mandamus relief.  *Ren v. Mueller*, No. 6:07CV790ORL19DAB, 2008 WL 191010, at *7 (M.D. Fla. Jan. 22, 2008) (citing *Gemini Realty, Inc. v. Gonzalez*, No. 6:06-cv-786-Orl-19DAB, 2006 WL 2927562, at *2 (M.D.Fla. Oct.12, 2006)); *Cacace v. Swacina*, No. 07-20410-CIV, 2007 WL 9709744, at *5 (S.D. Fla. May 17, 2007); *Miranda v. Gonzales*, No. 08-20682-CIV, 2008 WL 11417802, at *1 (S.D. Fla. Aug. 25, 2008); *see also LIT Ventures, LLC v. Carranza*, No. 220CV00706JADDJA, 2020 WL 2200845, at *2 (D. Nev. May 5, 2020) ("When the effect of a mandatory injunction is the equivalent of mandamus, it is governed by the same standard.").

## IV.   Argument

### A.   Petitioners cannot show a substantial likelihood of success.

Petitioners' underlying APA claims request the Court to invalidate the SBA's policy of providing EIDL Advances in the amount of $1,000 per employee up to $10,000 as arbitrary and capricious and in excess of statutory authority, as well as because the

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Administrator purportedly did not follow the rulemaking requirements of the APA. They also request that the Court Order the SBA to provide each Petitioner with the maximum amount of the EIDL Advance for these same reasons.   Doc. 25 at ¶¶ 82-91, 95-98, Prayer for Relief A & B.   However Petitioners cannot show a substantial likelihood of success on their claims.

### 1.   Sovereign immunity.

The party seeking to invoke federal jurisdiction has the burden of showing the existence of subject matter jurisdiction. *Roberts v. Swearingen*, 358 F. Supp. 3d 1341, 1346 (M.D. Fla. 2019).  Sovereign immunity is jurisdictional in nature, and absent a waiver, shields the United States and its agencies from suit.  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  Congress, has waived a degree of sovereign immunity against federal agencies in passing the APA, 5 U.S.C. §§ 701-706, which permits judicial review of actions against the United States "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted ... in an official capacity."  5 U.S.C. § 702.  The APA empowers courts to set aside agency actions that are "arbitrary, capricious, an abuse of discretion," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law."  5 U.S.C. § 706(2).

But, the APA's general grant of jurisdiction does not apply where another statute specifically precludes judicial review, or where the challenged action was "committed to agency discretion by law."  5 U.S.C. § 701(a)(2); *see Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1505 (11th Cir. 1992).  Here, this grant of jurisdiction is precluded by both

Section 634(b)(1) of the Small Business Act, and because the challenged action was "committed to agency discretion by law."

### a.  Section 634(b)(1) bars Petitioners' claims.

Section 634(b)(1) of the Small Business Act restricts the availability of injunctive relief against the SBA.  Under that section, the SBA Administrator can

> sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property[.]

15 U.S.C. § 634(b)(1).

In its previous order denying Petitioners' first motion for preliminary injunction this Court found that Section 634(b)(1) did not necessarily preclude this Court from granting injunctive relief in this case.  Doc. 21 at 4-7.  The basis for that ruling was the conclusion that neither *Romeo*, 462 F.2d 1036, 1037–38 (5th Cir. 1972), or other binding authority "barred injunctive relief where the Administrator exceeded authority or used discretion unlawfully." Doc. 21 at 4.  This Court acknowledged subsequent non-binding decisions that relied on *Romeo* and found that Section 634(b)(1) did bar all injunctive relief against the SBA, but did not find them persuasive because they did not engage in extensive discussion of the issue.  *Id.* at n.4.  However, just days after this Court issued its order denying the preliminary injunction, the Fifth Circuit again had the opportunity to address the bar of Section 634(b)(1), this time in connection with the PPP, where it explicitly held that the precedent in the Fifth Circuit bars all injunctive relief against the SBA.  *In re Hidalgo Cty. Emergency Serv. Found.*, 962 F.3d 838, 840-41 (5th Cir. 2020).

The Fifth Circuit expressly declined to revisit the issue or carve out an exception. *Id.* As the Court stated "[t]he issue at hand is not the validity or wisdom of the PPP regulations and related statutes, but the ability of a court to enjoin the Administrator, whether in regard to the PPP or any other circumstance." *Id.* at 141. Accordingly, citing *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1290 n.6 (5th Cir. 1994); *Valley Constr. Co. v. Marsh*, 714 F.2d 26, 29 (5th Cir. 1983) and *Expedient Servs., Inc. v. Weaver*, 614 F.2d 56, 58 (5th Cir. 1980), the Fifth Circuit explicitly refused to find any exception to the bar available and vacated the lower court's preliminary injunction based on claims that the SBA discriminated against the applicants and exceeded its statutory authority in regards to the PPP. While admittedly this opinion is not binding on this Court, it is instructive in its refusal to recognize any exception to the bar based on the line of cases that includes those that are in fact binding on this Court.

However, even if the Court is not inclined to change its conclusion on an absolute bar in light of the *Hidalgo County* opinion, respectfully, the previous conclusion reached by the Court is too broad in the face of the specific issue before the Court. The situation at hand is quite different than the examples this Court provided in its prior ruling – *e.g.*, blatant racially discriminatory policies under equal protection jurisprudence. Doc. 27 at 7. Assuming for the sake of this case that the Eleventh Circuit would not find sovereign immunity bars a plaintiff from challenging that sort of policy, that is not what the Court is faced with here. This is not a constitutional claim against the SBA for allegedly unconstitutional discrimination. Instead, this is merely a request for APA review of the SBA's chosen policy affecting *all* applicants, which has never been alleged to be

constitutionally infirm, on how to best manage the amount of applicants in light of the fixed funds available to it to implement the relief.  This is different than addressing a policy that treats some applicants different than others where the only relief sought is to treat all applicants the same, such as that faced in *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, No. 20-C-0601, 2020 WL 2088637, at *4 (E.D. Wis. May 1, 2020). There the court found that its ruling would not "interfere with the agency's internal operations" because all the SBA would have to do was to "process the plaintiffs' loan applications in the same manner that it processes the applications of other small businesses."  *Id.*; *see also Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052, 1056 (1st Cir. 1987) (holding § 634(b)(1) protects the SBA from injunctions that would interfere with internal workings but does not bar judicial review where the agency has exceeded its authority and the remedy would not interfere with internal agency workings).

That, however, is not what Petitioners here seek.  Rather, they seek a wholesale reworking of the entire process by which EIDL Advances are processed, and also seek to be granted more favorable treatment than all other similarly situated applicants by moving them to the front of the line for additional payments simply because they filed a lawsuit.[8]  Given the current status of the EIDL Advance appropriation, *see* 3rd Perriello

---

[8]Courts have recognized the inherent unfairness of allowing parties to jump the line when obtaining injunctive relief simply because they filed suit when the relief could not be provided to all similarly situated parties.  *See Casa Colina Hosp. & Centers for Healthcare v. Wright*, 698 F. App'x 406, 407 (9th Cir. 2017) (concluding conclude that granting relief would merely allow the petitioner "'to jump the queue of other identically situated parties' and would therefore achieve an arbitrary result and 'encourage a barrage of mandamus actions by others.'") (quotations in original); *Ramtin Massoudi MD Inc. v. Azar*, 2018 WL 6004523, at *7 (C.D. Cal. July 5, 2018) (declining to award expedited adjudication of Medicare claim by ALJ because it could not order relief for all similar situated parties); *American Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C.

Decl. ¶ 8, this would absolutely interfere with the SBA's internal operations and can be readily distinguished from a case seeking only to bring certain plaintiffs who had previously been singled out, in line with all other applicants.  Accordingly, even if the Court does not believe that *Hildago County* alters its analysis regarding Section 634(b)(1), Respondent respectfully suggests that the Court should narrow its previous conclusion that injunctive relief is available in this specific circumstance and instead find that Section 634(b)(1) does bar the specific relief sought here, particularly the request to order the maximum amount of the EIDL Advance be paid to each Petitioner.

### b.  The SBA's action is committed to agency discretion by law.

Although the APA contains "comprehensive provisions for judicial review of agency actions," a plaintiff "must first clear the hurdle of § 701(a)."  *Heckler v. Chaney*, 470 U.S. 821, 828 (1985).  Section 701(a)(2) excludes from judicial review "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). An action is committed to agency discretion when "the statute is drawn so that the court would have no meaningful standard against which to judge the agency's exercise of discretion." *Chaney*, 470 U.S. at 830; *Forsyth Cty.*, 633 F.3d at 1041.  The Eleventh Circuit has explained that "[i]f there are no judicially manageable standards available for judging how and when an agency should exercise its discretion, then it is impossible to determine even whether the agency abused its discretion." *Forsyth Cty.*, 633 F.3d at 1041 (quoting *Fla. Dep't of Bus. Regulation v. U.S. Dep't of Interior*, 768 F.2d 1248, 1256 (11th Cir. 1985)).

---

Cir. 2016) (mandamus should not issue to allow plaintiffs to "jump the line" because it would provide relief "at the expense of other similarly situated applicants").

The SBA "has been given complete discretion to determine the amount of any loans it has authority to grant." *Gifford v. Small Bus. Admin.*, 626 F.2d 85, 87 (9th Cir. 1980); *see also Copake Lake Dev. Admin. v. U.S. Gov't*, 490 F. Supp. 386, 389 (E.D.N.Y. 1980) (citing cases for the proposition that "the decision concerning the granting of a loan by the SBA is one firmly committed to agency discretion"); *Keita v. U.S. Small Bus. Admin.*, No. 07-CV-4958 ENV/LB, 2010 WL 395980, at *3 (E.D.N.Y. Feb. 3, 2010). The CARES Act only reinforces that broad authority. As one court recently explained:

> The CARES Act is an extension of powers that Congress has already granted to the SBA and its Administrator—most particularly for the emergency grant, the power to make and administer EIDLs. In that regard, Congress empowered the SBA "to make such loans as the Administration may determine to be necessary or appropriate to any small business concern located in an area affected by a disaster if the Administration determines that the concern has suffered a substantial economic injury as a result of such disaster." … Congress therefore granted the SBA discretion to determine what EIDLs were "necessary and appropriate." When the CARES Act is read in conjunction with this statute, it is plain that the SBA enjoys the same discretion when making emergency grants that Congress, with the CARES Act, included within the EIDLs purview.

*LIT Ventures*, 2020 WL 2200845, at *3 (alterations omitted) (quoting 15 U.S.C. § 636(b)(2)).

Indeed, when the CARES Act is read in conjunction with 15 U.S.C. § 636(b)(2)'s general grant of authority for EIDL loans, it is nearly indistinguishable from the statute that the Supreme Court found to be "committed to agency discretion by law." *Compare Webster v. Doe*, 486 U.S. 592, 600 (1988) (holding that a statute "foreclose[d] the application of any meaningful judicial standard of review" where it allowed the CIA director to terminate employees whenever he "shall deem such termination necessary or

14

advisable in the interests of the United States") *with* 15 U.S.C. § 636(b)(2) (granting the Administrator authority "to make [EIDL] loans . . . as the Administrator may determine to be necessary or appropriate to any small business concern").[9] Here, as in *Webster*, the disaster-loans provision "fairly exudes deference to the" Administrator, and "foreclose[s] the application of any meaningful judicial standard of review." *Webster*, 486 U.S. at 600.

The Eleventh Circuit has cautioned that "'[t]he court is not empowered to substitute its judgment for that of the agency,'" when the relevant statute "'leaves room for a responsible exercise of discretion and may not require particular substantive results in particular problematic instances.'" *Forsyth Cty.*, 633 F.3d at 1041-42 (quoting *Envtl. Def. Fund, Inc. v. Corps of Eng'rs of U.S. Army*, 492 F.2d 1123, 1139-40 n. 33 (5th Cir.1974)); *see also Gifford*, 626 F.2d at 86-87 ("The careful consideration of these criteria 'are matters on which experts may disagree; they involve nice issues of judgment and choice . . . which require the exercise of informed discretion.' Judicial Review of this determination could do no more than substitute our judgment for that of the SBA."); *Kruse v. Hampton*, 394 F. Supp. 764, 769 (S.D. Ala. 1974), *aff'd sub nom. Kruse v. Hampton,* 513 F.2d 1231 (5th Cir. 1975) ("A mere difference of judgment between a person disadvantageously affected by agency action and the responsible head of the agency over the merits of particular administration action … is not judicially reviewable."). Thus, even where a

---

[9] While the CARES Act directs the Administrator to waive some specific requirements of the Small Business Act, such as the requirement that borrowers personally guarantee loans, be in business for a certain time, and be unable to obtain credit elsewhere, see CARES Act § 1110(c)(1)-(3), the CARES Act does not diminish the Administrator's discretion in disbursing Advances. *See LIT Ventures*, 2020 WL 2200845, at *3-4.

reviewing court may believe that the policy ultimately implemented by the agency is not the one that best addresses the problem before the agency, where there are no guiding standards for the court to apply, it may not substitute its judgment for that of the agency.

Petitioners here, as have the plaintiffs in each of the cases challenging the EIDL Advance policy, would have this Court consider the language of Section 1110(e) of the CARES Act in a vacuum, separate from the overarching EIDL program.   There are several issues with this view.   First, doing so would not change the outcome, as § 1110(e) of the CARES ACT does not provide any standards by which to govern the exercise of this discretion by the SBA so long as the amount of a particular EIDL Advance does not exceed $10,000.   *See* Doc. 21 at 9 ("the 'shall be not more than' used in prescribing the amount of an EIDL grant affords the SBA discretion in awarding these advances as Congress only prescribed a cap on the amount rather than directing the SBA provide a specific amount) (citing 15 U.S.C. § 9009(e)(3)).   Second, because the CARES Act is an extension of the powers already granted to the SBA, it must be read in conjunction with the relevant portions of the Small Business Act.   *LIT Ventures, LLC*, 2020 WL 2200845, at *3.   Third, when making determinations under Section 702(a)(2), Courts have considered that the "existence of broad discretionary power in an agency often suggests that the challenged decision is the product of political, military, economic, or managerial choices that are not really susceptible to judicial review."   *Local 2855, AFGE (AFL-CIO) v. United States*, 602 F.2d 574, 579 (3d Cir. 1979) (cited favorably in *Am. Fed'n of Gov't Employees, Local 2017 v. Brown*, 680 F.2d 722, 726 (11th Cir. 1982)).    Considering the declared policy of the Small Business Act is to "strengthen and protect the nation's small

businesses," 15 U.S.C. § 631, "[t]he goal of the CARES Act is to extend a lifeline to all small businesses, not to promote or encourage any specific subset of small businesses", and the "purpose of the Small Business Act is to strengthen the economy by assisting all small businesses, *Camelot Banquet Rooms, Inc.*, 2020 WL 2088637, at *9, in conjunction with the SBA's long history of implementing discretionary policies designed to do so, the determination of how to best allocate the fixed amount of appropriated EIDL Advance funds to the country's small businesses is an area within the core expertise of the agency and has been committed to agency discretion by law.  So while the CARES Act creates a new form of assistance, it does not abrogate the SBA's long-standing discretion in administering its programs. APA review is therefore committed to SBA's discretion and unreviewable.

It should be noted, that "[d]etermination that a matter is unreviewable because it is committed to agency discretion does not, however, 'slam the door to the courthouse airtight.'"  *Local 2855, AFGE (AFL-CIO)*, 602 F.2d at 580.  "Even when a court ascertains that a matter has been committed to agency discretion by law, it may entertain charges that the agency lacked jurisdiction, that the agency's decision was occasioned by impermissible influences, such as fraud or bribery, or that the decision violates a constitutional, statutory or regulatory command."  *Id.*; *see also Keita*, 2010 WL 395980, at *3-4 ("The APA does not bar this Court from reviewing whether the SBA's decision was the product of invidious discrimination in violation of the Fifth Amendment.").  In other words, an agency cannot exercise its discretion to commit blatantly unconstitutional acts and hope to hide behind § 701(a)(2).  Nor can it exercise of

discretion in a way that violates specific restrictions of the CARES Act, such as the explicit $10,000 cap or that would require EIDL approval to obtain the Advance as well. *See LIT Ventures, LLC*, 2020 WL 2200845, at *4, n. 35.

Here there are no assertions such assertions.  There are no assertions that impermissible influences such as fraud or the like influenced the $1,000 per employee policy.  There are no assertions that the CARES Act specifically prohibited the $1,000 per employee policy.[10]  And there is no assertion that the policy violates a constitutional prohibition.  Rather, Petitioners' argument is that because CARES Act did not include a provision that specifically allowed the Administrator to provide EIDL Advances in the amount of $1,000 per employee, it cannot be a proper policy.  Doc. 25 at ¶¶ 95-98; Doc. 27 at 15 ("Nowhere in the CARES Act does it mention tethering the amount of the Emergency EIDL Grant to the number of employees of the applicant").  But this is not the proper focus of the inquiry.  Unless Petitioners can point to a specific statutory provision the policy violates, which they have not, a disagreement with the effectiveness of the exercise of the Administrator's discretion to implement a $1,000 per employee policy does not avoid the bar of § 701(a)(2).

### 2. Even if Petitioners' APA claims could proceed, Petitioners cannot show a substantial likelihood of success on their merits.

The APA provides that courts must "'hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or found to be] without observance of procedure

---

[10] Petitioners' previously rejected assertion that applicants, not the SBA, choose the amount of the Advance notwithstanding.

required by law.'" *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008) (quoting 5 U.S.C. § 706(2)).   Under Section 706(2), Petitioners argue that the Administrator's decision to distribute Advances based on the number of employees (up to $10,000) is arbitrary and capricious, and in excess of statutory authority.   Petitioners also assert that the SBA was required to publish the policy in the Federal Register.

### a.   The policy is not in excess of statutory authority (Section 706(2)(C)).

The Eleventh Circuit applies a two-step test "[w]hen [ ] review[ing] an agency's interpretation of a statute that the agency is responsible for administering."  *Sierra Club v. Johnson*, 436 F.3d 1269, 1274 (11th Cir. 2006) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984)).  While the $1,000 per employee policy is not a formal substantive rule, the Supreme Court has recognized that even when reviewing informal rules *Chevron* deference can be appropriate.  *See Edelman v. Lynchburg College*, 535 U.S. 106, 114 (2002) ("We agree with the Government as amicus that deference under *Chevron* … does not necessarily require an agency's exercise of express notice-and-comment rulemaking power); *Thomas v. Osegueda*, No. 2:15-CV-0042-WMA, 2015 WL 3751994, at *3, n.4 (N.D. Ala. June 16, 2015).  This is especially the case where, as here, Congress expressly provided that no such notice and comment process was required.  *See Brennan v. United States*, No. 4:20-CV-00505-KGB, 2020 WL 3980001 at n.2 (E.D. Ark. July 14, 2020).  Indeed, Petitioners themselves have evaluated this issue under the rubric of *Chevron* deference.  Doc. 27 at 19-20.

Under *Chevron*, at "step one," courts examine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.  If so, "that is the end

of the matter," and courts must enforce the "unambiguously expressed intent of Congress." *Id.* at 842-43. In the case of silence or ambiguity in the statute, however, "step two" requires courts to defer to a reasonable agency interpretation, even if the court would have otherwise reached a contrary conclusion. *Id.* at 843.

Here, as this Court has previously recognized, Congress has not spoken to the precise amount of the EIDL Advances the SBA must provide, other than to cap them at $10,000. Petitioners still assert that Congress has spoken to the issue by pressing its already-rejected argument that the CARES Act requires the SBA to provide an EIDL Advance in the amount requested by the applicant. Doc. 27 at 20. However, as this Court and each of the other district courts that have addressed the issue have already determined, this is not what Section 1110(e) of the CARES Act provides. Doc. 21 at 9; *LIT Ventures*, 2020 WL 2200845, at *2; *Brennan*, 2020 WL 3980001, at *8-*9. Rather, Congress left discretion to the SBA to implement that aspect of the CARES Act. Doc. 21 at 9; *LIT Ventures*, 2020 WL 2200845, at *2; *Brennan*, 2020 WL 3980001, at *8-*9. As Petitioners' entire argument rests on this previously rejected contention, this Court should proceed to step two in the analysis.

Thus the question becomes whether the SBA's decision to provide less than the full $10,000 per applicant, and use the $1,000 per employee metric to do so, was a reasonable agency interpretation. Indeed, this Court "need not conclude that the agency construction was the only one it permissibly could have adopted" or even that we would have interpreted the statute the same way that the agency did. *Sierra Club*, 436 F.3d 1269, 1274 (quoting *Chevron*, 467 U.S. at 843 n.11). Given the broad discretion the SBA

has in determining the amount of EIDL loans, and the fact that the SBA was faced with an unprecedented number of applications for a limited amount of funds before EIDL Advances were even disbursed, the SBA's interpretation that disbursements should be tethered to an objective and easily verifiable metric (number of employees) rather than automatically distributing $10,000 per applicant was a reasonable interpretation for the SBA to make.  *See* Ex. A to 1*st* Perriello Decl.; 3*rd* Perriello Decl. ¶¶ 5-7; July 17, 2020 Congressional Testimony of Administrator Carranza, *supra*.

As several courts have noted in upholding limitations imposed by the SBA on the PPP program, given "the speed with which Congress adopted the CARES Act and wanted funds to be disbursed in the light of the pandemic," it "is understandable that Congress did not spell out in the statute all requirements for PPP participation.  Instead, Congress entrusted the details to the SBA, engrafting the PPP on to the SBA's existing section 7(a) lending program, and giving the SBA emergency rulemaking authority." *Schuessler v. U.S. Small Bus. Admin.*, No. AP 20-02065-bhl, 2020 WL 2621186, at *11 (Bankr. E.D. Wis. May 22, 2020); *Matter of Henry Anesthesia Assocs. LLC,* No. AP 20-06084-LRC, 2020 WL 3002124, at *9 (Bankr. N.D. Ga. June 4, 2020).  Against that backdrop, the $1,000 per employee policy is not beyond the SBA's delegated authority. Accordingly, Petitioners cannot show a substantial likelihood of success on the merits of their APA claim under Section 706(2)(C).

### b.    The policy is not arbitrary or capricious (Section 706(2)(A)).

The Eleventh Circuit has stated that a court "may find a rule arbitrary and capricious where 'the agency has relied on factors which Congress has not intended it to

consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Alabama-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1254 (11th Cir. 2007) (quoting *Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 43 U.S. 29, 42 (1983)).  However, a court may not "substitute [its] judgment for that of the agency."  *Id.* (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). "This is a deferential standard. 'If the reviewing court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion.'" *Aztec Envtl., Inc. v. Wynne*, No. 4:05CV399-RH/WCS, 2006 WL 8443113, at *2 (N.D. Fla. Jan. 6, 2006) (quoting *Latecoere Intern, Inc. v. United States Dep't of the Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994) (citations omitted).

Here Petitioners' primary contention is that the SBA's decision was not reasonable because Congress could not have intended the SBA to rely on the number of employees of a small business to determine the amount of funds that entity receives. Doc. 27 at 15.  However, the basis for this entire argument is that Congress did not specify in the CARES Act that the SBA use this method to distribute the EIDL Advances.  Had Petitioners identified any factors provided by Congress, and then asserted the method the SBA used was improper given that list, their argument may carry more weight. Of course, Congress did not provide any guidance for the Administrator in how to determine the amount of the EIDL Advance other than to cap it at $10,000,

much less list any "proper" factors to consider, leaving a large portion of implementation of the CARES Act to the SBA's expertise and discretion.  *See Schuessler*, 2020 WL 2621186, at *11.

As discussed above, the SBA has broad discretion to assist small business owners. And it exercised her discretion to maximize assistance to the greatest number of applicants by determining that Advances would be awarded based on a calculation of $1,000 per employee up to the maximum amount of $10,000.  *See* Ex. A to 1st Perriello Decl.; 3rd Perriello Decl. ¶¶ 5-7; July 17, 2020 Congressional Testimony of Administrator Carranza, *supra*.  Given the SBA was well aware that more than 3.7 million applications had been submitted before the first disbursement was even made, and the goal of the Small Business Act and CARES Act are to help *all* small businesses, not any particular one, *see Camelot Banquet Rooms, Inc.*, 2020 WL 2088637, at *9, this was a rational and reasonable policy choice to try and provide relief to as many applicants as possible using an objective metric that could be implemented in a reasonably efficient fashion.

As the court in *Schuessler* stated in the context of the PPP, simply because a chosen policy is not necessarily "delicate or precise policymaking" or that the policy at issue could be considered a "broad or blunt instrument" for balancing needs for quick payment with the desire to put funds in the hands of as many small businesses as possible, does not render the policy arbitrary or capricious.  2020 WL 2621186, at *12.  This is true even where the SBA could have adopted other alternative approaches to implement the EIDL Advances.  *Id.*  So long as the decision is supported by a reasonable basis, as it is here, the Court is not permitted to merely substitute one policy choice for another, even

if the Court disagrees with the choice the SBA made. *Id.*; *Aztec Envtl., Inc.*, 2006 WL 8443113, at *2. Accordingly, Petitioners cannot show a substantial likelihood of success on the merits of their APA claim under Section 706(2)(A).

### c. Lack of publication did not cause harm to Petitioners, nor was publication required.

Petitioners also assert that the $1,000 per employee policy is invalid because the Administrator did not follow the procedures in 5 U.S.C. § 552(a)(1).[11] Such a claim requires a litigant to make two showings. First, "a litigant must demonstrate that it … did not have actual notice of the content" of the policy at issue. *Nat'l Veterans Legal Servs. Program v. United States Dep't of Def.*, No. 14-CV-01915 (APM), 2016 WL 4435175, at *13 (D.D.C. Aug. 19, 2016) (quoting *Texas Alliance for Home Care Servs. v. Sebelius*, 811 F. Supp. 2d 76, 103 (D.D.C. 2011), *aff'd*, 681 F.3d 402 (D.C. Cir. 2012)). Second, the plaintiff "must show that he was adversely affected by a lack of publication or that he would have been able to pursue an alternative course of conduct had the information been published." *Id.* (quoting *Alliance for Cannabis Therapeutics v. DEA*, 15 F.3d 1131, 1136 (D.C. Cir. 1994)). Petitioners' lack support for their effort to impose a broader standard under Section 551(a)(1)(C), namely one that fails to ascribe any causation to the publication itself.

Petitioners, who applied for disaster loans at various points in time have not made a showing that they all were unaware of the $1,000 per employee policy that SBA was

---

[11] Note that here Congress exempted any rules under the CARES Act from the notice and comment procedures under 5 U.S.C. § 533(b). *See Brennan*, 2020 WL 3980001, at n.2. Instead, the only issue is whether publication of the policy itself was required, and whether, even if it was required Petitioners can demonstrate the requisite harm flowed form the lack of such publication.

implementing at the time they applied.  However, assuming that at least some of the Petitioners did apply without such knowledge,[12] they still have not shown that the lack of publication, not just the policy itself, "adversely affected" them or that publication would have afforded them an alternative course of conduct.  The district court in *Brennan* addressed this very argument in its recent denial of a preliminary injunction, pointing out that the plaintiff there had not shown how publication of the $1,000 per employee policy would have made any difference in the amount of EIDL Advance it received.  *Brennan*, 2020 WL 3980001, at *12 (citing *Pesikoff v. Sec'y of Labor*, 501 F.2d 757, 763 n.12 (D.C. Cir. 1974)); *see also Bagnall v. Sebelius*, No. 3:11CV1703 MPS, 2013 WL 5346659, at *17 (D. Conn. Sept. 23, 2013), *aff'd in part, vacated in part on other grounds by Barrows v. Burwell*, 777 F.3d 106 (2d Cir. 2015) (explaining that the lack of publication must be the cause of whatever harm is being claimed).  Published or not, Petitioners here would have obtained the exact same amount of EIDL Advance.  *Brennan*, 2020 WL 3980001, at *12.[13]  For this reason alone Petitioners cannot show a likelihood of success on the merits of their rulemaking claim under Section 552(a)(1).

In addition, Petitioners' argument under Section 552(a)(1) suffers from the additional flaw that the SBA was not required to publish the $1,000 per employee policy in the Federal Register to begin with.  Despite Petitioners' assertions otherwise, the $1,000 per employee policy is not a "substantive rule" that "binds the public" or has the

---

[12] Respondent is informed that counsel for Petitioners submitted the applications for EIDL for almost, if not all, of the Petitioners.  Thus, their knowledge would be imputed to Petitioners.

[13] For these same reasons it is questionable that Petitioners even have standing to bring this claim to begin with.  *See Brennan*, 2020 WL 3980001, at *11 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"force of law." *Brennan*, 2020 WL 3980001, at *12; *Pacific Gas & Electric Co. v. Federal Power Commission*, 506 F.2d 33, 38 (D.C. Cir. 1974); *Vietnam Veterans of Am. v. Sec'y of Navy*, 843 F.2d 528, 536 (D.C. Cir. 1988). Rather, "[w]hen the matter in issue involves a policy that is entirely internal to the agency and that, of itself, does not affect the conduct of private parties, publication is not required by section 552(a)(1)(D)." *Bunge Corp. v. United States*, 5 Cl. Ct. 511, 523 (Cl. Ct. 1984). "In other words, the Freedom of Information Act requires publication of those policies of which the public must be aware in order to conform its conduct to the agency's requirements." *Id.* Here, the $1,000 per employee policy would have no bearing on Petitioners' conduct, it is simply an internal metric based on pre-existing criteria (i.e., how many employees an entity already had) for the SBA to use in determining how to distribute the EIDL Advance funds among numerous applicants. Indeed, it would be quite problematic if § 552(a)(1) did apply here. "Any belabored rule-making process would have defeated the Congressional purpose of the EIDL Advance Program, that is, to assist small business owners with immediate financial relief during the COVID-19 pandemic." *Brennan*, 2020 WL 3980001, at *12.

   **3.     Even if Petitioners could demonstrate a likelihood of success on the merits of their claims, they would not be entitled to payment of $10,000.**

   While the APA authorizes the court to grant interim relief, *see* 5 U.S.C. § 705, that authority "does not confer jurisdiction onto the Court to alter the status quo nor does it allow the Court in issuing interim relief to actually dictate specific terms or conditions to a governmental agency." *Salt Pond Assocs. v. Army Corp of Eng'rs*, 815 F. Supp. 766, 775-76 (D. Del. 1993); *Boansi v. Johnson*, No. 2:14-CV-47-BO, 2014 WL

6883133, at *2 (E.D.N.C. Dec. 3, 2014); *Comprehensive Cmty. Dev. Corp. v. Sebelius*, No. 12 CIV. 0776 PAE, 2012 WL 738185, at *8 (S.D.N.Y. Mar. 7, 2012); *see also Alabama v. U.S. Army Corps of Engineers*, 382 F. Supp. 2d 1301, 1314-15 (N.D. Ala. 2005) ("to prevent irreparable injury while the court reviews an agency action challenged under the APA, the court may enter orders as necessary to postpone the effective date of the agency action or to preserve the *status quo* or rights pending conclusion of the review proceedings"). "'Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards.'" *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400 (D.C. Cir. 2005) (quoting *Cnty. of L.A. v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999)); *see also Buffalo Field Campaign v. Zinke*, 289 F. Supp. 3d 103, 111-12 (D.D.C. 2018) (noting the Court may not devise a specific remedy for the agency to provide the plaintiffs, but can only send the issue back to the agency for further action consistent with the correct legal standards); *Lawrence & Mem'l Hosp. v. Burwell*, No. 3:13CV1495 (JBA), 2016 WL 1746022, at *4 (D. Conn. May 2, 2016) (collecting cases). Accordingly, even if the Court were to find Petitioners have shown a likelihood of success on any of the APA claims, the Court would be limited to, at most, providing a temporary injunction against using the $1,000 per employee policy for any further distributions under the EIDL Advance program until the Court renders final judgment in this case.

Even if this Court were not so limited in the relief it could provide on Petitioners' claims, Petitioners' request for the $10,000 payments would still fail. That is because

when reviewing a request for mandatory preliminary injunction under the APA, Petitioners must meet the same standards as they would to obtain mandamus relief. *Ren*, 2008 WL 191010, at *7; *Cacace*, 2007 WL 9709744, at *5; *Miranda*, 2008 WL 11417802, at *1; *see also LIT Ventures, LLC*, 2020 WL 2200845, at *2 ("When the effect of a mandatory injunction is the equivalent of mandamus, it is governed by the same standard."). Typically such requests arise under claims brought pursuant to Section 706(1), which is the provision that permits the Court to "compel agency action unlawfully withheld or unreasonably delayed." However, Petitioners have not asserted such a claim here. And even if they had, they would necessarily be required to show the SBA had a legal requirement to provide the maximum $10,000 to each applicant, a premise previously rejected by this Court, Doc. 21 at 9, as well as every other court to have addressed the issue. *LIT Ventures*, 2020 WL 2200845, at *3; *Brennan*, 2020 WL 3980001, at *8.

## B. Petitioners cannot show irreparable harm will occur unless the Court enters a preliminary injunction.

Even if Petitioners can show a substantial likelihood of success on the merits, they must still make a showing of irreparable harm. *Northeastern Florida Chapter of Ass'n of General Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). The Eleventh Circuit has "emphasized on many occasions, the asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Swain v. Junior*, 961 F.3d 1276, 1292 (11th Cir. 2020) (quoting *Siegel*, 234 F.3d at 1176). To obtain a preliminary injunction, the moving party must establish that an irreparable injury will

be suffered unless the injunction issues.  *FHR TB, LLC*, 865 F. Supp. 2d at 1206.  To be sure, many small businesses have and continue to suffer hardship from the COVID-19 pandemic.  However, for the purposes of this motion, that is not the question.  Rather, the moving party must make a "clear showing" of "substantial," "actual and imminent" irreparable harm, as opposed to "a merely conjectural or hypothetical—threat of future injury."  *Id.* (quoting *Winter*, 555 U.S. at 22).

Here, because as discussed above, Petitioners cannot obtain a preliminary order requiring the immediate payment of $10,000 for claims under the APA, any claims of irreparable harm arising for the need for that immediate payment are irrelevant.  Instead, Petitioners must demonstrate that without this Court staying or temporarily enjoining the use of the $1,000 per employee policy during the pendency of this litigation they will suffer irreparable harm.  However, Petitioners have not made any assertions at all with respect to this issue—instead focusing their claims only on the purported need for immediate payment of the $10,000.  Accordingly, Petitioners have failed to make the require showing of irreparable harm that would support a stay of the $1,000 per employee policy while this case proceeds, and the Court can deny Petitioners' motion on this ground alone.

Even if the Court could order the immediate payment of $10,000 at this preliminary stage, Petitioners have failed to make the necessary showing of irreparable harm under the heightened burden that applies to mandatory injunctions.  *See King Ranch, Inc.*, 2013 WL 2371246, at *4 (requiring a "strong showing of necessity").  While certain of the Petitioners may have suffered economic harms to their businesses as a

result of the COVID-19 pandemic, the question for this Court is not whether they have suffered economic injuries in general, but whether they have shown they will likely suffer irreparable harm in the absence of the Court granting them the relief the seek. *Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285.  Specifically, it is not enough that a party has or may suffer disruptions to their business, but rather that there is an imminent likelihood that there will be the loss of a business.  *See In re New York Skyline, Inc.*, No. 09-10181 (SMB), 2013 WL 5487938, at *8 (Bankr. S.D.N.Y. Oct. 2, 2013); *Dimare Fresh, Inc. v. Sun Pac. Mktg. Coop., Inc.*, No. CIVF 06 1265 AWI SMS, 2006 WL 2686969, at *3 (E.D. Cal. Sept. 19, 2006).  Nor are vague assertions of loss of goodwill sufficient to demonstrate irreparable harm.  *Premier Nutr., Inc. v. Org. Food Bar, Inc.*, 475 F.Supp.2d 995, 1007 (C.D. Cal. 2007).

Ten Petitioners submitted no evidence regarding their personal circumstances to assert they would face irreparable harm if the preliminary injunction is denied:  (1) DMS Moving Systems of Alabama, Inc.; (2) JMR Builders, Inc.; (3) Beachside Marine, Inc.; (4) Kirk K. Kessel Companies, Inc.; (5) Paul Meissner; (6) Southern Cloud Solutions Corporation; (7) Jimmy's Cigar Lounge, Inc.; (8) Jenkins Arah Corporation; (9) International Title and Escrow Company, LLC; (10) Title Solutions of  Florida, LLC. *See generally* Doc. 27.  Accordingly, the Court should conclude that none of these Petitioners have made the necessary showing.  *See* Local Rule 4.05(b)(2) (requiring evidence of "specific facts" that the moving party is threatened with "irreparable injury"); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 491 (3d Cir. 2000) (reversing preliminary injunction for not providing evidence of their specific circumstances).

Of the remaining 22 Petitioners, 12 had their disaster loans funded before they ever submitted the declarations to support their motion.[14]  Rivera Decl. ¶ 4.  And one more is nearly funded.   *Id.* at ¶ 5.  The EIDL Advance is not an additional amount of money on top of the total loan, but rather is an advance on the total amount of the loan.  CARES Act § 1110(e).  Any entity that has had their loan funded has access to whatever money it would be entitled to from the SBA, irrespective of the amount of the EIDL Advance.[15]  Thus any claim that they would suffer irreparable harm at this point due to the amount designated as an EIDL Advance is not based in fact.

Petitioners also fail to address the fact that eight Petitioners, including five who submitted affidavits, decided not to pursue the EIDL once they made the initial application.  Three Petitioners affirmatively told the SBA they were no longer interested in pursuing a loan, and five others simply took no action to proceed with the loan process after submitting their initial application.  Rivera Decl. ¶¶ at 6-7.  In other words, Petitioners ask this Court to provide equitable relief to them in the form of the maximum amount of the Advance because of alleged irreparable harm that they could have sought to avoid by proceeding with the loan process.  *Second City Music, Inc. v. City of Chicago, Ill.*, 333 F.3d 846, 850 (7th Cir. 2003) (holding self-inflicted injury is insufficient to constitute irreparable harm); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) (same); *Willard v. Baldwin Cty. Bd. of Educ.*, No. CV 09-0406-KD-N,

---

[14] This twelve includes Safari Trading LLC.  Six of the ten Petitioners that failed to submit an affidavit at all have had their EIDL funded, and one more will soon be.  *See* Rivera Decl. ¶¶ 4-5.
[15] The only question that potentially remains for these entities is how much they may be required to repay to the SBA over the course of the EIDL, but that issue certainly would not require immediate relief.

2009 WL 10704886, at *2 (S.D. Ala. July 27, 2009); *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) ("self-inflicted" harm severely undermines claim for equitable relief).  As noted in *Second City Music*, where two options will ostensibly keep a plaintiff in business, one of them being an injunction, and the plaintiff fails to avail itself of the other option on its own accord, it is not the lack of injunction that results in irreparable harm to the plaintiff.  *Second City Music, Inc.*, 333 F.3d at 850; *see also Willard*, 2009 WL 10704886, at *2 (noting where a plaintiff has alternatives to avoid the harm alleged and fails to take advantage of them the harm is not irreparable harm for the purposes of a preliminary injunction); *Bellin v. La Pensee Condo. Ass'n, Inc.*, No. 05-80071-CIV, 2005 WL 8156021, at *9 (S.D. Fla. Oct. 13, 2005) ("[I]f Plaintiff can mitigate the threatened 'irreparable harm,' she cannot refuse to do so and yet still claim that she would be irreparably injured absent an injunction."), *report and recommendation adopted*, No. 05-80071-CIV, 2006 WL 8433644 (S.D. Fla. Jan. 6, 2006).  Here, these seven Petitioners could have continued to proceed with the EIDL application and used the loan money to support their businesses while the challenge to amount of the Advance proceeded.  Instead these Petitioners chose not to do so.

Only four of the remaining Petitioners, 99 Bottles Hospitality, LLC[16], Mr. & Mrs. Freddie Fix It, Inc., NovaPro, Inc. and T-LIGO USA, LLC pursued the EIDL and were ultimately declined for the loan.  Rivera Decl. ¶ 8.  However, as was the case with

---

[16] Of note, 99 Bottles Hospitality received a substantial PPP loan as was recently disclosed by the Department of Treasury.  *See* PPP Over 150k Disclosure (Line Entry 159291), *available at https://home.treasury.gov/policy-issues/cares-act/assistance-for-small-businesses/sba-paycheck-protection-program-loan-level-data*

Petitioners' prior motion, the Petitioners have submitted only affidavits of officers of the entities containing conclusory, unverifiable, and sometimes speculative assertions. *See Atleisure, Inc. v. Ace Evert Inc.*, No. 1:12-CV-1260-CAP, 2013 WL 12099363, at *8 (N.D. Ga. June 6, 2013) ("Conclusory statements by an officer of the moving party are of limited probative value. More than simple recitation of the threat, [the plaintiff] must present specific 'credible and admissible evidence that such damage threatens its businesses with termination.'") (quoting *Dimare Fresh, Inc.*, 2006 WL 2686969, at *3 (E.D. Cal. Sept. 19, 2006) (citations omitted)); *Nat'l Mining Ass'n v. Jackson*, 768 F.Supp.2d 34, 52 (D.D.C. 2011) (while the declarant "raise[d] legitimate concerns about the current and future health of his company," to obtain preliminary injunctive relief, it was necessary to provide "more than [his] conclusory projection ... to show that any of the plaintiff's small business members currently face certain, imminent business closings"); *In Vue Sec. Prod. Inc.*, No. 8:18-CV-2548-T-33SPF, 2019 WL 4671143, at *5 (M.D. Fla. July 1, 2019). While "[a]t the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction," *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (citation omitted), due weight should also be given to the fact that the responding party does not have the opportunity to "confront the declarant." *CBS, Inc. v. PrimeTime 24 Joint Venture*, 9 F. Supp. 2d 1333, 1342 (S.D. Fla. 1998).

Recently, the district court for the District of Columbia agreed that similar affidavits concerning the alleged impact of inability to obtain a PPP loan were insufficient to demonstrate irreparable harm where they contained "mostly conclusory

statements about the financial hardships the affiants are facing . . . [with] no way of measuring whether these hardships are imminent and irreparable without access to more detailed financial documentation." *Am. Ass'n of Political Consultants v. United States Small Bus. Admin.*, No. CV 20-970, 2020 WL 1935525, at *6 (D.D.C. Apr. 21, 2020), *aff'd*, 810 F. App'x 8 (D.C. Cir. 2020); *see also LSSi Data Corp. v. Comcast Phone, LLC*, No. 1:11-CV-1246-CAP, 2013 WL 12244044, at *6 (N.D. Ga. Mar. 4, 2013); *Keywords, LLC v. Internet Shopping Enterprises, Inc.*, No. CV 05-2488 MMM (EX), 2005 WL 8156440, at *15 (C.D. Cal. June 29, 2005); *Dimare*, 2006 WL 2686969, at *3. In short "[a] moving party must provide independent proof of irreparable harm." *In Vue Sec. Prod. Inc.*, 2019 WL 4671143, at *5.

### C. The balance of equities and public interest do not favor the grant of a preliminary injunction here.

As stated above, the last two preliminary injunction factors (the balance of equities and public interest) "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. The CARES Act was passed when "[t]he Executive and Legislative Branches quickly responded to the COVID-19 crisis with this virtually unanimous legislation." *Am. Ass'n of Political Consultants v. United States Small Bus. Admin.*, 2020 WL 1935525, at *7 (D.D.C. Apr. 21, 2020). The CARES Act EIDL provision administers relief through the SBA. Generally, SBA programs operate "with the ultimate aim not of encouraging … individual growth but rather the growth of small businesses generally." *Elk Assocs. Funding Corp. v. U.S. Small Bus. Admin.*, 858 F.Supp.2d 1, 32 & n.29 (D.D.C. 2012) (denying TRO because irreparable harm suffered by private entity in SBA's

administration of Small Business Investment Company program was outweighed by the public interest); *see also Camelot Banquet Rooms, Inc.*, 2020 WL 2088637, at *9.  Thus, the public interest in a swift economic response to the COVID-19 crisis included an almost unanimous decision by Congress to provide relief through the SBA, an agency whose mission is to promote growth of all small businesses.  As with other SBA programs, the Administrator is exercising discretion to award EIDL Advances in a manner best adapted to the COVID-19 crisis by providing proportional advances to as many small businesses as possible.  While the relief petitioners seek would undoubtedly serve their own interests, it would not serve the public interest as it would necessary deprive other similarly situated businesses of support from SBA.  Accordingly, neither the balance of the equities, nor the public interest weigh in favor of granting a preliminary injunction.

## V.      Conclusion

For the reasons explained above, Petitioners' request for a preliminary injunction should be denied.

This 30th day of July, 2020.                              Respectfully submitted,

                                                                          MARIA CHAPA LOPEZ
                                                                          United States Attorney

                                                       By:      */s/ Adam R. Smart*
                                                                          ADAM R. SMART
                                                                          Assistant United States Attorney
                                                                          USAO No. 195
                                                                          400 W. Washington St., Ste. 3100
                                                                          Orlando, Florida  32801
                                                                          Telephone: (407) 648-7500
                                                                          Facsimile: (407) 648-7588
                                                                          Email: adam.smart@usdoj.gov