UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CELEBRATION LAW, P.A., *et al.*

           Petitioners,

v.                                                                         CASE NO: 6:20-cv-665-Orl-37GJK

JOVITA CARRANZA, ADMINISTRATOR
OF THE UNITED STATES SMALL
BUSINESS ADMINISTRATION,

           Respondent.

_____/

### MOTION TO DISMISS PETITIONERS' AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.   Introduction………………………………………………………….……1

II.   Factual Background………………………………………………….……2

III.   Legal Standards…………………………………………………………6

IV.   Argument……………………………………………………….………7

A.  Sovereign immunity bars Petitioners' claims...……………………………7

1.  Section 634(b)(1) bars Petitioners' APA claims……………………….…8

2.  The SBA's action is committed to agency discretion by law………………12

B.  Petitioners have failed to state a claim for failure to follow
the procedures in Section 552(a)(1)…..…………………………….………17

1.  Petitioners have not alleged the requisite causation for such
a claim…………………………..………………………………….17

2.  The SBA was not required to publish the $1,000 per employee
policy in the Federal Register to begin with ………………….………20

V.   Conclusion…………………………………………………………........22

Respondent, Jovita Carranza, Administrator of the United States Small Business Administration ("SBA"), files this motion to dismiss Petitioners' APA claims for lack of subject matter jurisdiction, and as to the claim related to publication in the Federal Register, for the additional reason that they have failed to state a claim for which relief can be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction

Under the Coronavirus Aid, Relief, and Economic Stimulus ("CARES") Act, Pub. L. 116-136, 134 Stat. 281, the SBA has provided emergency grants to small businesses ("EIDL Advances") by calculating $1,000 per employee, up to a maximum of $10,000.  Petitioners previously filed a petition for mandamus relief and a related motion for preliminary injunction claiming entitlement to the maximum EIDL Advance on the basis of the statutes' language, despite not having 10 or more employees. However, this Court denied their request, holding that the CARES Act provided the SBA with some discretion on how to implement the EIDL Advance portion of the statute, and thus the Court could not compel the SBA to pay each of the Petitioners the maximum permissible Advance of $10,000.  Doc. 21 at 9.  Petitioners subsequently amended their complaint asserting claims under the Administrative Procedure Act ("APA") that the method the SBA chose to exercise its discretion was arbitrary and capricious and in excess of the SBA's authority, and claiming that the SBA's failure to publish the policy in the Federal Register entitles them to relief.  Doc. 25.

However, the Court should dismiss Petitioners' complaint for lack of subject matter jurisdiction because this Court lacks the power to review the SBA's $1,000 per employee policy under the APA (1) because of the bar on injunctive relief contained in Section 634(b)(1) of the Small Business Act, and (2) because the action is one committed to agency discretion by law.  As to the claim concerning publication in the Federal Register, the Court should dismiss the claim under Fed. R. Civ. P. 12(b)(6) because Petitioners have not, and cannot alleged the requisite causation, and for the additional reason that the policy is not one that needed to be published in the Federal Register in the first instance.

## II.     Factual Background

The declared policy of the Government under the Small Business Act, 15 U.S.C. §§ 631 *et seq.*, is to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns," in order to preserve the system of free competitive enterprise that is "essential" to the economic well-being and security of the Nation. 15 U.S.C. § 631(a).  To promote that important national objective, Congress created the SBA, under the management of a single Administrator, *id.* § 633(a), (b)(1), who is given "extraordinarily broad powers" under section 7(a) of the Act, 15 U.S.C. § 636(a), to provide a wide variety of technical, managerial, and financial assistance to small-business concerns.  *See SBA v. McClellan*, 364 U.S. 446, 447 (1960); *see generally* 15 U.S.C. § 636(a) (describing numerous varieties of general small-business loans the Administrator is "authorized" and "empowered" to make); 13 C.F.R. § 120.1.  In the performance of these authorized functions, the SBA Administrator is further empowered

to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and in addition to "take any and all actions ... [that] [she] determines . . . are necessary or desirable in making . . loans." 15 U.S.C. § 634(b)(6), (7).  As part of this authority, the SBA Administrator administers an Economic Injury Disaster Loan ("EIDL") Program. *See* 15 U.S.C. 636(b), (c), (f); 13 C.F.R. § 123.300, *et seq.*; 61 Fed. Reg. 3304 (Jan. 31, 1996), *as amended*.

On March 27, 2020, President Trump signed into law the CARES Act, passed by Congress to provide an unprecedented package of emergency economic assistance and other support to help individuals, families, businesses, and health-care providers cope with the enormous economic and public health crises triggered by the worldwide coronavirus (COVID-19) pandemic.  *See Profiles, Inc. v. Bank of Am. Corp.*, No. CV SAG-20-0894, 2020 WL 1849710, at *1 (D. Md. Apr. 13, 2020).

Among other things, the CARES Act amended section 7(a) of the Small Business Act and provided new measures to address the COVID-19 crisis including Paycheck Protection Program ("PPP") loans, SBA Debt Relief, and EIDL Advances.  *See* https://www.sba.gov/funding-programs/loans/coronavirus-relief-options.

The relevant portion of the CARES Act provides:

> (1) IN GENERAL.—During the covered period, an entity included for eligibility in subsection (b), including small business concerns, private nonprofit organizations, and small agricultural cooperatives, that applies for a loan under section 7(b)(2) of the Small Business Act (15 U.S.C. 636(b)(2)) in response to COVID–19 may request that the Administrator provide an advance that is, subject to paragraph (3), in the amount requested by such applicant to such applicant within 3 days after the Administrator receives an application from such applicant.

3

(2) VERIFICATION.—Before disbursing amounts under this subsection, the Administrator shall verify that the applicant is an eligible entity by accepting a self-certification from the applicant under penalty of perjury pursuant to section 1746 of title 28 United States Code.

(3) AMOUNT.—The amount of an advance provided under this subsection shall be not more than $10,000.

CARES Act § 1110(e)(1)-(3).

Congress initially appropriated $10 billion dollars for the EIDL Advances. CARES Act, Pub. L. 116-136, 134 Stat. 281, § 1100(e)(7) (Mar. 27, 2020). Due to the significant number of applicants for the program, *see infra*, and in order to get assistance to as many of the applicants as possible using a method that would not unnecessarily slow down the process, the SBA used its discretion to implement a policy to distribute the EIDL Advances in the amount of $1,000 per employee.[1] *See* Doc. 33-1 at 23 (Ex. A to 1st Perriello Decl. (Butler Memo)); Doc. 33-1 at 29 (3rd Perriello Decl. ¶¶ 5-7). As explained by the Administrator,

> The EIDL advance administration was based on the number of applications that were, again, in the queue applying for the advance and we based it on $1,000 per employed, it wasn't just an arbitrary number, it was a well assessed and analyzed strategy. It was discussed with members of the Senate Small Business Committee. We had advised them that in order to cover the number of applicants, the number of small businesses that were applying for the advance, we needed to do something so that many more people would receive the funds. The average for both the agriculture and as well as normal businesses were about three employees per business.

---

[1] If the full $10,000 per applicant was provided, then the fund would have been depleted after the first 1 million applicants received the advance. Congress eventually increased this appropriation to $20 billion. *See LIT Ventures, LLC*, 2020 WL 2200845, at *1 (citing 15 U.S.C. § 9009(e)(7)).

July 17, 2020 Congressional Testimony of Administrator Carranza (at 1:51:15), available at https://youtu.be/UHbHPs9Jn5w.

After the CARES Act was signed into law on March 27, 2020, the SBA and a contractor prepared a computer system ("System") to process EIDL applications and Advance requests, and the System began processing applications on April 7, 2020 in small batches.  The System ramped up to full capacity by April 16, 2020, by which time approximately 3.79 million submitted applications were awaiting processing in the System.  *See* Doc. 33-1 at 3 (Wall Decl. ¶¶ 3-8).[2]  As of July 15, 2020, the System had processed approvals for 5,781,390 applications, and paid or obligated the entire $20 billion appropriation.  Doc. 33-1 at 36, available at https://www.sba.gov/sites/default/files/2020-07/EIDL%20COVID-19%20Advance%207.15.20-508.pdf; Doc. 33-1 at 29 (3rd Perriello Decl. ¶ 8); Doc. 33-1 at 40 (SBA Press Release No. 20-56 (7/11/20)), *available at* https://www.sba.gov/about-sba/sba-newsroom/press-releases-media-advisories/sba-provided-20-billion-small-businesses-and-non-profits-through-economic-injury-disaster-loan.[3]

According to Petitioners, they filed applications for EIDLs and Advances at a variety of times beginning on March 30, 2020, through April 13, 2020 (*see* Docs. 27-7, -17).  Petitioners assert that they asked for the maximum Advance allowed by the CARES

---

[2] Because the same declarations have been used numerus times in this litigation, Respondent cites to the docket reference for their latest filing (in response to Petitioners' second motion for preliminary injunction) at Doc. 33-1.

[3] A very small amount of those funds—only a fraction of one percent—have been returned to SBA, and SBA is currently in the process of determining the appropriate action to be taken regarding those returned funds.  Doc. 33-1 at 29 (3rd Perriello Decl. ¶ 8).

Act, $10,000; however, none of the remaining Petitioners received an EIDL Advance in the maximum amount of $10,000. *See* Doc. 19; Doc. 33-1 at 25 (2nd Perriello Decl. ¶ 4); Doc. 33-1 at 29 (3rd Perriello Decl. ¶ 4). Eighteen of the Petitioners' disaster loans were funded prior to the filing of the amended complaint. *See* Doc. 33-1 at 32 (Rivera Decl. ¶ 4).[4] Two more are nearly funded. *Id.* at ¶ 5. The EIDL Advance is included within the total amount of the loan as it is merely an "advance" on the loan itself,[5] CARES Act § 1110(e)(1), so at this point each of the eighteen entities (and soon the other two) has the entire amount of money they would be entitled to irrespective of this Courts' rulings. Three Petitioners affirmatively told the SBA they were no longer interested in pursuing the disaster loan, and five simply made no effort to obtain the loan after the initial application. *Id.* at ¶¶ 6-7. Four remaining Petitioners pursued the disaster loans but their applications were ultimately denied. *Id.* at ¶ 8.

## III.   Legal Standards

The United States and its agencies have sovereign immunity from suit unless it has expressly waived such immunity and consented to be sued. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 32 (1992); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Petitioners bear the burden of establishing subject matter jurisdiction and, thus, must prove an explicit waiver of immunity. *See Ishler v. Internal Revenue*, 237 F. App'x 394, 398 (11th Cir. 2007). On a Rule 12(b)(1) motion to dismiss, subject matter jurisdiction can be challenged facially or

---

[4] Safari Trading LLC was inadvertently left off of the Rivera Declaration; however, its EIDL for $51,000 was funded on May 16, 2020.
[5] Although a party need not repay the EIDL Advance if it is not ultimately approved for the EIDL. CARES Act § 1110(e)(5).

factually.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  In a facial challenge, the court must accept a plaintiff's allegations as true and determine whether he has alleged a sufficient basis for subject matter jurisdiction.  *Id.* at 1529.  In a factual challenge, the court must determine if it has the power to hear the case and can look beyond the pleadings.  *Id.*  Here the Administrator brings a factual attack on this Court's jurisdiction to hear Petitioners' APA claims.

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679 (citing *Twombly*, 550 U.S. at 556).  To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

## IV.    Argument

### A.    Sovereign immunity bars Petitioners' claims.

The party seeking to invoke federal jurisdiction has the burden of showing the existence of subject matter jurisdiction.  *Ishler*, 237 F. App'x at 398.  Sovereign immunity is jurisdictional in nature, and absent a waiver, shields the United States and its agencies from suit.  *Meyer*, 510 U.S. at 475.

Congress, has waived a degree of sovereign immunity against federal agencies in passing the APA, 5 U.S.C. §§ 701-706, which permits judicial review of actions against the United States "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted ... in an official capacity."  5 U.S.C. § 702.  The APA empowers courts to set aside agency actions that are "arbitrary, capricious, an abuse of discretion," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law."  5 U.S.C. § 706(2).

But, the APA's general grant of jurisdiction does not apply where another statute specifically precludes judicial review, or where the challenged action was "committed to agency discretion by law."  5 U.S.C. § 701(a)(2); *see Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1505 (11th Cir. 1992).  Here, this grant of jurisdiction is precluded by both Section 634(b)(1) of the Small Business Act, and because the challenged action was "committed to agency discretion by law."

### 1.   Section 634(b)(1) bars Petitioners' APA claims.

Section 634(b)(1) of the Small Business Act restricts the availability of injunctive relief against the SBA.  Under that section, the SBA Administrator can

> sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property[.]

15 U.S.C. § 634(b)(1).

In its previous order denying Petitioners' first motion for preliminary injunction this Court found that Section 634(b)(1) did not necessarily preclude this Court from

granting injunctive relief in this case.  Doc. 21 at 4-7.  The basis for that ruling was the conclusion that neither *Romeo*, 462 F.2d 1036, 1037–38 (5th Cir. 1972), or other binding authority "barred injunctive relief where the Administrator exceeded authority or used discretion unlawfully."  Doc. 21 at 4.  This Court acknowledged subsequent non-binding decisions that relied on *Romeo* and found that Section 634(b)(1) did bar all injunctive relief against the SBA, but did not find them persuasive because they did not engage in extensive discussion of the issue.  *Id.* at n.4.  However, just days after this Court issued its order denying the preliminary injunction, the Fifth Circuit again had the opportunity to address the bar of Section 634(b)(1), this time in connection with the PPP, where it explicitly held that the precedent in the Fifth Circuit bars all injunctive relief against the SBA.  *In re Hidalgo Cty. Emergency Serv. Found.*, 962 F.3d 838, 840-41 (5th Cir. 2020). The Fifth Circuit expressly declined to revisit the issue or carve out an exception.  *Id.*  As the Court stated "[t]he issue at hand is not the validity or wisdom of the PPP regulations and related statutes, but the ability of a court to enjoin the Administrator, whether in regard to the PPP or any other circumstance."  *Id.* at 141.  Accordingly, citing *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1290 n.6 (5th Cir. 1994); *Valley Constr. Co. v. Marsh*, 714 F.2d 26, 29 (5th Cir. 1983) and *Expedient Servs., Inc. v. Weaver*, 614 F.2d 56, 58 (5th Cir. 1980), the Fifth Circuit explicitly refused to find any exception to the bar available and vacated the lower court's preliminary injunction based on claims that the SBA discriminated against the applicants and exceeded its statutory authority in regards to the PPP.  While admittedly this opinion is not binding on this Court, it is instructive in its refusal to

recognize any exception to the bar based on the line of cases that includes those that are in fact binding on this Court.

However, even if the Court is not inclined to change its conclusion on an absolute bar in light of the *Hidalgo County* opinion, respectfully, the previous conclusion reached by the Court is too broad in the face of the specific issue before the Court.  The situation at hand is quite different than the examples this Court provided in its prior ruling – *e.g.*, blatant racially discriminatory policies under equal protection jurisprudence.  Doc. 27 at 7.  Assuming for the sake of this case that the Eleventh Circuit would not find sovereign immunity bars a plaintiff from challenging that sort of policy, that is not what the Court is faced with here.  This is not a constitutional claim against the SBA for allegedly unconstitutional discrimination.  Instead, this is merely a request for APA review of the SBA's chosen policy affecting *all* applicants, which has never been alleged to be constitutionally infirm, on how to best manage the amount of applicants in light of the fixed funds available to it to implement the relief.  This is different than addressing a policy that treats some applicants different than others where the only relief sought is to treat all applicants the same, such as that faced in *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, No. 20-C-0601, 2020 WL 2088637, at *4 (E.D. Wis. May 1, 2020). There the court found that its ruling would not "interfere with the agency's internal operations" because all the SBA would have to do was to "process the plaintiffs' loan applications in the same manner that it processes the applications of other small businesses."  *Id.*; *see also Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052, 1056 (1st Cir. 1987) (holding § 634(b)(1) protects the SBA from injunctions that would interfere

with internal workings but does not bar judicial review where the agency has exceeded its authority and the remedy would not interfere with internal agency workings).

That, however, is not what Petitioners here seek. Rather, they seek a wholesale reworking of the entire process by which EIDL Advances are processed, and also seek to be granted more favorable treatment than all other similarly situated applicants by moving them to the front of the line for additional payments simply because they filed a lawsuit.[6] Given the current status of the EIDL Advance appropriation, *see* Doc. 33-1 at 29 (3rd Perriello Decl. ¶ 8), this would absolutely interfere with the SBA's internal operations and can be readily distinguished from a case seeking only to bring certain plaintiffs who had previously been singled out, in line with all other applicants. Accordingly, even if the Court does not believe that *Hildago County* alters its analysis regarding Section 634(b)(1), Respondent respectfully suggests that the Court should narrow its previous conclusion that injunctive relief is available in this specific circumstance and instead find that Section 634(b)(1) does bar the specific relief sought here, particularly the request to order the maximum amount of the EIDL Advance be paid to each Petitioner.

---

[6] Courts have recognized the inherent unfairness of allowing parties to jump the line when obtaining injunctive relief simply because they filed suit when the relief could not be provided to all similarly situated parties. *See Casa Colina Hosp. & Centers for Healthcare v. Wright*, 698 F. App'x 406, 407 (9th Cir. 2017) (concluding conclude that granting relief would merely allow the petitioner "'to jump the queue of other identically situated parties' and would therefore achieve an arbitrary result and 'encourage a barrage of mandamus actions by others.'") (quotations in original); *Ramtin Massoudi MD Inc. v. Azar*, 2018 WL 6004523, at *7 (C.D. Cal. July 5, 2018) (declining to award expedited adjudication of Medicare claim by ALJ because it could not order relief for all similar situated parties); *American Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016) (mandamus should not issue to allow plaintiffs to "jump the line" because it would provide relief "at the expense of other similarly situated applicants").

### 2.    The SBA's action is committed to agency discretion by law.

Although the APA contains "comprehensive provisions for judicial review of agency actions," a plaintiff "must first clear the hurdle of § 701(a)." *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Section 701(a)(2) excludes from judicial review "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). An action is committed to agency discretion when "the statute is drawn so that the court would have no meaningful standard against which to judge the agency's exercise of discretion." *Chaney*, 470 U.S. at 830; *Forsyth Cty.*, 633 F.3d at 1041. The Eleventh Circuit has explained that "[i]f there are no judicially manageable standards available for judging how and when an agency should exercise its discretion, then it is impossible to determine even whether the agency abused its discretion." *Forsyth Cty.*, 633 F.3d at 1041 (quoting *Fla. Dep't of Bus. Regulation v. U.S. Dep't of Interior*, 768 F.2d 1248, 1256 (11th Cir. 1985)).

The SBA "has been given complete discretion to determine the amount of any loans it has authority to grant." *Gifford v. Small Bus. Admin.*, 626 F.2d 85, 87 (9th Cir. 1980); *see also Copake Lake Dev. Admin. v. U.S. Gov't*, 490 F. Supp. 386, 389 (E.D.N.Y. 1980) (citing cases for the proposition that "the decision concerning the granting of a loan by the SBA is one firmly committed to agency discretion"); *Keita v. U.S. Small Bus. Admin.*, No. 07-CV-4958 ENV/LB, 2010 WL 395980, at *3 (E.D.N.Y. Feb. 3, 2010). The CARES Act only reinforces that broad authority. As one court recently explained:

> The CARES Act is an extension of powers that Congress has already granted to the SBA and its Administrator—most particularly for the emergency grant, the power to make and administer EIDLs. In that regard, Congress empowered the SBA "to make such loans as the Administration may determine to be necessary or appropriate to any small

> business concern located in an area affected by a disaster if the Administration determines that the concern has suffered a substantial economic injury as a result of such disaster." … Congress therefore granted the SBA discretion to determine what EIDLs were "necessary and appropriate."  When the CARES Act is read in conjunction with this statute, it is plain that the SBA enjoys the same discretion when making emergency grants that Congress, with the CARES Act, included within the EIDLs purview.

*LIT Ventures*, 2020 WL 2200845, at *3 (alterations omitted) (quoting 15 U.S.C. § 636(b)(2)).

Indeed, when the CARES Act is read in conjunction with 15 U.S.C. § 636(b)(2)'s general grant of authority for EIDL loans, it is nearly indistinguishable from the statute that the Supreme Court found to be "committed to agency discretion by law." *Compare Webster v. Doe*, 486 U.S. 592, 600 (1988) (holding that a statute "foreclose[d] the application of any meaningful judicial standard of review" where it allowed the CIA director to terminate employees whenever he "shall deem such termination necessary or advisable in the interests of the United States") *with* 15 U.S.C. § 636(b)(2) (granting the Administrator authority "to make [EIDL] loans . . . as the Administrator may determine to be necessary or appropriate to any small business concern").[7] Here, as in *Webster*, the disaster-loans provision "fairly exudes deference to the" Administrator, and "foreclose[s] the application of any meaningful judicial standard of review." *Webster*, 486 U.S. at 600.

---

[7] While the CARES Act directs the Administrator to waive some specific requirements of the Small Business Act, such as the requirement that borrowers personally guarantee loans, be in business for a certain time, and be unable to obtain credit elsewhere, see CARES Act § 1110(c)(1)-(3), the CARES Act does not diminish the Administrator's discretion in disbursing Advances.  *See LIT Ventures*, 2020 WL 2200845, at *3-4.

The Eleventh Circuit has cautioned that "'[t]he court is not empowered to substitute its judgment for that of the agency,'" when the relevant statute "'leaves room for a responsible exercise of discretion and may not require particular substantive results in particular problematic instances.'" *Forsyth Cty.*, 633 F.3d at 1041-42 (quoting *Envtl. Def. Fund, Inc. v. Corps of Eng'rs of U.S. Army*, 492 F.2d 1123, 1139-40 n. 33 (5th Cir.1974)); *see also Gifford*, 626 F.2d at 86-87 ("The careful consideration of these criteria 'are matters on which experts may disagree; they involve nice issues of judgment and choice . . . which require the exercise of informed discretion.' Judicial Review of this determination could do no more than substitute our judgment for that of the SBA."); *Kruse v. Hampton*, 394 F. Supp. 764, 769 (S.D. Ala. 1974), *aff'd sub nom. Kruse v. Hampton,* 513 F.2d 1231 (5th Cir. 1975) ("A mere difference of judgment between a person disadvantageously affected by agency action and the responsible head of the agency over the merits of particular administration action … is not judicially reviewable."). Thus, even where a reviewing court may believe that the policy ultimately implemented by the agency is not the one that best addresses the problem before the agency, where there are no guiding standards for the court to apply, it may not substitute its judgment for that of the agency.

Petitioners here, as have the plaintiffs in each of the cases challenging the EIDL Advance policy, would have this Court consider the language of Section 1110(e) of the CARES Act in a vacuum, separate from the overarching EIDL program. There are several issues with this view. First, doing so would not change the outcome, as § 1110(e) of the CARES Act does not provide any standards by which to govern the exercise of this discretion by the SBA so long as the amount of a particular EIDL Advance does not

exceed $10,000.  *See* Doc. 21 at 9 ("the 'shall be not more than' used in prescribing the amount of an EIDL grant affords the SBA discretion in awarding these advances as Congress only prescribed a cap on the amount rather than directing the SBA provide a specific amount) (citing 15 U.S.C. § 9009(e)(3)).  Second, because the CARES Act is an extension of the powers already granted to the SBA, it must be read in conjunction with the relevant portions of the Small Business Act.  *LIT Ventures, LLC*, 2020 WL 2200845, at *3.  Third, when making determinations under Section 702(a)(2), Courts have considered that the "existence of broad discretionary power in an agency often suggests that the challenged decision is the product of political, military, economic, or managerial choices that are not really susceptible to judicial review."  *Local 2855, AFGE (AFL-CIO) v. United States*, 602 F.2d 574, 579 (3d Cir. 1979) (cited favorably in *Am. Fed'n of Gov't Employees, Local 2017 v. Brown*, 680 F.2d 722, 726 (11th Cir. 1982)).  Considering the declared policy of the Small Business Act is to "strengthen and protect the nation's small businesses," 15 U.S.C. § 631, "[t]he goal of the CARES Act is to extend a lifeline to all small businesses, not to promote or encourage any specific subset of small businesses", and the "purpose of the Small Business Act is to strengthen the economy by assisting all small businesses, *Camelot Banquet Rooms, Inc.*, 2020 WL 2088637, at *9, in conjunction with the SBA's long history of implementing discretionary policies designed to do so, the determination of how to best allocate the fixed amount of appropriated EIDL Advance funds to the country's small businesses is an area within the core expertise of the agency and has been committed to agency discretion by law.  So while the CARES Act creates a new form of assistance, it does not abrogate the SBA's long-standing

discretion in administering its programs.  APA review is therefore committed to SBA's discretion and unreviewable.

It should be noted, that "[d]etermination that a matter is unreviewable because it is committed to agency discretion does not, however, 'slam the door to the courthouse airtight.'"  *Local 2855, AFGE (AFL-CIO)*, 602 F.2d at 580.  "Even when a court ascertains that a matter has been committed to agency discretion by law, it may entertain charges that the agency lacked jurisdiction, that the agency's decision was occasioned by impermissible influences, such as fraud or bribery, or that the decision violates a constitutional, statutory or regulatory command."  *Id.*; *see also Keita*, 2010 WL 395980, at *3-4 ("The APA does not bar this Court from reviewing whether the SBA's decision was the product of invidious discrimination in violation of the Fifth Amendment.").  In other words, an agency cannot exercise its discretion to commit blatantly unconstitutional acts and hope to hide behind § 701(a)(2).  Nor can it exercise of discretion in a way that violates specific restrictions of the CARES Act, such as the explicit $10,000 cap or in a way that would require EIDL approval to obtain the Advance as well.  *See LIT Ventures, LLC*, 2020 WL 2200845, at *4, n. 35.

Here there are no such assertions.  There are no assertions that impermissible influences such as fraud or the like influenced the $1,000 per employee policy.  There are no assertions that the CARES Act specifically prohibited the $1,000 per employee policy.[8]  And there is no assertion that the policy violates a constitutional prohibition.

---

[8] Petitioners' previously rejected assertion that applicants, not the SBA, choose the amount of the Advance notwithstanding.

Rather, Petitioners' argument is that because CARES Act did not include a provision that specifically allowed the Administrator to provide EIDL Advances in the amount of $1,000 per employee, it cannot be a proper policy.  Doc. 25 at ¶¶ 95-98; Doc. 27 at 15 ("Nowhere in the CARES Act does it mention tethering the amount of the Emergency EIDL Grant to the number of employees of the applicant").  But this is not the proper focus of the inquiry.  Unless Petitioners can point to a specific statutory provision the policy violates, which they have not, a disagreement with the effectiveness of the exercise of the Administrator's discretion to implement a $1,000 per employee policy does not avoid the bar of § 701(a)(2).

For the foregoing reasons, this Court should dismiss Petitioners' APA claims under Fed. R. Civ. P. 12(b)(1), as barred by sovereign immunity.

**B.**     **Petitioners have failed to state a claim for failure to follow the procedures in Section 552(a)(1).**

**1.**     **Petitioners have not alleged the requisite causation for such a claim.**

Petitioners assert that the $1,000 per employee policy is invalid because the Administrator did not follow the procedures in 5 U.S.C. § 552(a)(1).[9]  Section 552(a)(1) lists various categories of material that must be published in the Federal Register and states that "a person may not in any manner be required to resort to, or be adversely

---

[9] Note that here Congress exempted any rules under the CARES Act from the notice and comment procedures under 5 U.S.C. § 533(b).  *See Brennan*, 2020 WL 3980001, at n.2.  Although Petitioners purport to assert claims under Section 553(b) arguing that if publication did not occur in 14 days the exemption somehow lapses, *see* Doc. 25 at ¶¶ 85-87, there is no basis for this tortured reading of Section 1114 of the CARES Act.   Instead, the only issue is whether publication of the policy itself was required, and whether, even if it was required Petitioners can demonstrate the requisite harm flowed from the lack of such publication.

affected by, a matter required to be published in the Federal Register and not so published."  5 U.S.C. § 552(a)(1).

Assuming publication was even required in the Federal Register (*see, infra* section III.B.2.),[10] Petitioners have failed to state a claim for which this Court can grant relief. Such a claim requires a litigant to make two showings.  First, "a litigant must demonstrate that it … did not have actual notice of the content" of the policy at issue. *Nat'l Veterans Legal Servs. Program v. United States Dep't of Def.*, No. 14-CV-01915 (APM), 2016 WL 4435175, at *13 (D.D.C. Aug. 19, 2016) (quoting *Texas Alliance for Home Care Servs. v. Sebelius*, 811 F. Supp. 2d 76, 103 (D.D.C. 2011), *aff'd*, 681 F.3d 402 (D.C. Cir. 2012)).  Second, the plaintiff "must show that he was adversely affected by a lack of publication or that he would have been able to pursue an alternative course of conduct had the information been published."  *Id.* (quoting *Alliance for Cannabis Therapeutics v. DEA*, 15 F.3d 1131, 1136 (D.C. Cir. 1994)).  Petitioners have not made sufficient allegations as to the necessary elements for such a claim.  Specifically, Petitioners have not, nor can they, allege that they were adversely impacted by the lack of publication of the policy or that they would have been able to pursue an alternative course of conduct had the $1,000 per employee policy been published.  Rather, they simply make a conclusory assertion that they were "adversely affected," presumably, based on their motion for preliminary injunction, meaning they received EIDL Advances of less than

---

[10] *See Zaharakis v. Heckler*, 744 F.2d 711, 714 (9th Cir. 1984) (declining to reach the issue of whether publication as even required where the appellant "failed to make an initial showing that he was adversely affected by the lack of publication").

$10,000.  *See* Doc. 25 at ¶ 91.  But this would have occurred whether the policy was published or not.

Assuming that at least some of the Petitioners did apply without such knowledge,[11] they still have not shown that the lack of publication, not just the policy itself, "adversely affected" them or that publication would have afforded them an alternative course of conduct.  The district court in *Brennan* addressed this very argument in its recent denial of a preliminary injunction, pointing out that the plaintiff there had not shown how publication of the $1,000 per employee policy would have made any difference in the amount of EIDL Advance it received.  *Brennan*, 2020 WL 3980001, at *12 (citing *Pesikoff v. Sec'y of Labor*, 501 F.2d 757, 763 n.12 (D.C. Cir. 1974)); *see also Nat'l Veterans Legal Servs. Program*, 2016 WL 4435175, at *13 (noting no plaintiff "has alleged how their applications would have been different had they known [of the policy]"); *Bagnall v. Sebelius*, No. 3:11CV1703 MPS, 2013 WL 5346659, at *17 (D. Conn. Sept. 23, 2013), *aff'd in part, vacated in part on other grounds by Barrows v. Burwell*, 777 F.3d 106 (2d Cir. 2015) (explaining that the lack of publication must be the cause of whatever harm is being claimed); *Donovan v. Wollaston Alloys, Inc.*, 695 F.2d 1, 9 (1st Cir. 1982) ("There is no alternative course of action that Wollaston might have taken had the program been published, and the company would have been selected for inspection in any event."); *Cheshire Hosp. v. New Hampshire-Vermont Hospitalization Serv., Inc.*, 528 F. Supp. 1104,

---

[11] While they have not alleged they were unaware of the $1,000 per employee policy when they applied, Respondent will assume for the sake of this motion that at least some of them can do so based on the fact that the Butler Memo announcing the policy was issued on April 7, 2020, after several Petitioners assert they applied for an EIDL in their affidavits submitted in support of their motion for preliminary injunction.

1112 (D.N.H. 1981), *vacated on other grounds*, 689 F.2d 1112 (1st Cir. 1982).  Published

or not, Petitioners here would have obtained the exact same amount of EIDL Advance.

*Brennan*, 2020 WL 3980001, at *12.[12]  Accordingly, Petitioners have not sufficiently

alleged that the lack of publication of the policy (rather than the policy in and of itself)

adversely affected them, and their claims under Section 552(a)(1) must be dismissed for

failure to state a claim for which relief can be granted.

> ### 2.    The SBA was not required to publish the $1,000 per employee policy in the Federal Register to begin with.

Petitioners' argument under 5 U.S.C. § 552(a)(1) suffers from the additional flaw

that the SBA was not required to publish the $1,000 per employee policy in the Federal

Register to begin with.  If publication was not required, per force, a plaintiff cannot

prevail on a claim based on a failure to publish the policy.

Again, Section 552(a)(1) lists various categories of material that must be

published in the Federal Register.  Pertinent here is the requirement in subsection (D)

which requires publication of "substantive rules of general applicability adopted as

authorized by law, and statements of general policy or interpretations of general

applicability formulated and adopted by the agency."   Section 552(a)(1)(D).   A

"substantive" rule "establishes a standard of conduct which has the force of law," *Pacific

Gas & Electric Co. v. Federal Power Commission*, 506 F.2d 33, 38 (D.C. Cir. 1974), and such

---

[12] For these same reasons it is questionable that Petitioners even have standing to bring this claim to begin with.  *See Brennan*, 2020 WL 3980001, at *11 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

rules have "a binding effect or impos[e] rights or obligations," *Vietnam Veterans of Am. v. Sec'y of Navy*, 843 F.2d 528, 536 (D.C. Cir. 1988).

Moreover, "the requirement for publication [in the Federal Register] attaches only to matters which if not published would adversely affect a member of the public." *Bagnall*, 2013 WL 5346659, at *17; *see also McKenzie v. Heckler*, 602 F. Supp. 1150, 1160 (D. Minn. 1985) ("Federal courts have held that the FOIA requires publication of all administrative rules which have a 'significant impact' on a segment of the public."). "In other words, the Freedom of Information Act requires publication of those policies of which the public must be aware in order to conform its conduct to the agency's requirements." *Bunge Corp. v. United States*, 5 Cl. Ct. 511, 523 (Cl. Ct. 1984). "When the matter in issue involves a policy that is entirely internal to the agency and that, of itself, does not affect the conduct of private parties, publication is not required by section 552(a)(1)(D)." *Id.*

Despite Petitioners' assertions otherwise, the $1,000 per employee policy is not a "substantive rule" that "binds the public" or has the "force of law." *Brennan*, 2020 WL 3980001, at *12; *Pacific Gas & Electric Co.*, 506 F.2d at 38; *Vietnam Veterans of Am.*, 843 F.2d at 536. Rather, it is "a policy that is entirely internal to the agency and that, of itself, does not affect the conduct of private parties." *Bunge Corp.*, 5 Cl. Ct. at 523. Here, the $1,000 per employee policy would have no bearing on Petitioners' conduct, it is simply an internal metric based on pre-existing criteria (i.e., how many employees an entity already had) for the SBA to use in determining how to distribute the EIDL Advance funds among numerous applicants. Indeed, it would be quite problematic if

Section 552(a)(1) did apply here. "Any belabored rule-making process would have defeated the Congressional purpose of the EIDL Advance Program, that is, to assist small business owners with immediate financial relief during the COVID-19 pandemic." *Brennan*, 2020 WL 3980001, at *12.

Accordingly, this Court should dismiss Petitioners' rulemaking claims for either of the alternative reasons that they have not sufficiently alleged they were impacted by the *lack of publication* of the policy, or because publication was not required in the first instance.

## V.    Conclusion

For the reasons explained above, the Court should dismiss Petitioners' APA claims as barred by the United States' sovereign immunity; and additionally dismiss Petitioners' rulemaking claim because they have failed to state a claim for which relief can be granted.

This 4th day of August, 2020.                              Respectfully submitted,

                                                                                  MARIA CHAPA LOPEZ
                                                                                  United States Attorney

                                                          By:      */s/ Adam R. Smart*
                                                                          ADAM R. SMART
                                                                          Assistant United States Attorney
                                                                          USAO No. 195
                                                                          400 W. Washington St., Ste. 3100
                                                                          Orlando, Florida  32801
                                                                          Telephone: (407) 648-7500
                                                                          Facsimile: (407) 648-7588
                                                                          Email: adam.smart@usdoj.gov