**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

WIDERMAN MALEK P.L., et al.,

     Petitioners,

         v.

                                        Case No.: 6:20-cv-00665

JOVITA CARRANZA, Administrator of the
UNITED STATES SMALL BUSINESS
ADMINISTRATION,

     Respondent

**PETITIONERS' REPLY IN FURTHER SUPPORT OF THEIR**
**MOTION FOR PRELIMINARY INJUNCTION**

i

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................................iii

    I.    Introduction......................................................................................................... 1

    II.    Sovereign Immunity Does Not Bar Jurisdiction under Section 634(b)(1)....................... 2

    III.    SBA's Action is not "Committed to Agency Discretion by Law".................................. 3

    IV.    The Policy is Arbitrary and Capricious (Section 706(2)(A)).......................................... 3

    V.    Lack of Publication Caused Harm to Petitioners ............................................................ 4

    VI.    Petitioners are Entitled to a Grant up to $10,000 ............................................................. 5

    VII.    Irreparable Harm Will Occur Without a Preliminary Injunction ..................................... 6

    VIII.    Balance of Equities and Public Interest Favor a Preliminary Injunction ...................... 7

# TABLE OF AUTHORITIES

**Cases**

*Bowen v. Mich. Acad. of Family Phys.*
476 U.S. 667 (1986)............................................................................................................ 1

*Brennan v. United States*,
No. 4:20-CV-00505-KGB, 2020 WL 3980001 (E.D. Ark. July 14, 2020) ............................... 5

*Camelot Banquet Rooms, Inc. v. United States Small Business Administration*,
No. 20-C-0601, 2020 WL 2088637 (E.D. Wis. May 1, 2020) ..................................................... 7

*DV Diamond Club of Flint, LLC v. United States Small Business Administration*,
No. 20-CV-10899, 2020 WL 2315880 *(E.D. Mich. May 11, 2020)*........................................... 7

*Eli Lilly v. Natural Answers, Inc.*,
233 F.3d 456 (7th Cir. 2000) ........................................................................................... 8

*F.T.C. v. Univ. Health, Inc.*,
938 F.2d 1206 (11th Cir. 1991) ........................................................................................ 8

*Motor Vehicle Manufacturers Association v. State Farm Auto Mutual Insurance Co.*,
463 U.S. 29 (1983).......................................................................................................... 4, 8

*S.E.C. v. World Radio Mission, Inc.*,
544 F.2d 535 (1st Cir. 1976)............................................................................................. 8

*Se. Mech. Servs., Inc. v. Brody*, No.
8:08-CV-1151-T-30EAJ, 2008 WL 4613046 (M.D. Fla. Oct. 15, 2008).................................. 6

*Truglia v. KFC Corp.*,
692 F. Supp. 271 (S.D.N.Y. 1988) .................................................................................. 6

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
858 F.3d 1034 (7th Cir. 2017) .......................................................................................... 7

**Statutes**
5 U.S.C. §706(2)(C)............................................................................................................. 3
CARES Act §1110(e)(5)....................................................................................................... 1
CARES Act §1114(e)(1)....................................................................................................... 3
CARES Act 1110(a)(2)(B) ................................................................................................... 4

## I.        Introduction

As a general matter, there is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Phys.* 476 U.S. 667, 670 (1986). Throughout this case, the Respondent has continued to conflate the words "Grant" and "Loan" as well as the words "Grant" and "Advance" in an effort to distract the Court from the accepted definitions of those terms and the clear language of the statute.  Section 1110(e) of the CARES Act is entitled "Emergency ***Grant***", not Emergency ***Advance*** or Emergency ***Loan***.  This Grant is a new provision, separate and distinct from the EIDL Loan. The CARES Act is clear that the Emergency EIDL Grant is a ***grant***, not a ***loan***, and does not need to be paid back. The Respondent also repeatedly attempts to deceive this Court by replacing the word "Grant" with "Advance" and falsely claiming that the Emergency EIDL Grant is part of the EIDL Loan. This argument is clearly rebutted by the fact that Applicants who are deemed ineligible for the loan do not have to repay the Grant.  (CARES Act §1110(e)(5)).

While the Respondent falsely claims that "Congress did not provide any guidance for the Administrator in how to determine the amount of the EIDL 'Advance' other than to cap it at $10,000" the fact is that the CARES Act clearly states the Emergency EIDL Grant was to be "in the amount requested by such applicant." In addition, the Respondent has received more than 10 letters from Congress chastising her "mismanagement" of the Emergency EIDL Grant Program, "disregarding current law and Congressional intent", and demanding that the Respondent "Award $10,000 SBA Emergency EIDL Grants as Intended." (Doc. 27, Exhibit A-1). The Senate Minority Leader and 14 other members of Congress wrote to the Respondent, stating "Congress specifically stated that the applicant, not the agency, has the sole authority to determine how much grant money they receive up to $10,000." (Doc. 25, Exhibit A-5). If respondent truly believed she received no

1

guidance, why would she not enact the clear guidance and demands contained in the many letters from Congress that objected to the SBA's interpretation of the statute?

The Respondent's abuse of discretion and arbitrary and capricious acts have been so egregious that a new bill, S.4227, was introduced in Congress on July 20, 2020, that requires the SBA to "top up" every Emergency EIDL Grant recipient that was underpaid by the SBA, to the full $10,000 as required by the CARES Act. As explained by Senator Rosen, "The bill would require SBA to provide $10,000 EIDL Advance grants to all eligible small businesses, regardless of size, as intended by the original CARES Act." As further explained by Senator Cornyn, "the SBA placed caps on EIDL Advance grants to small businesses of $1,000 per-employee (up to $10,000), rather than the congressionally mandated $10,000 for every eligible small business.

II.     **Sovereign Immunity Does Not Bar Jurisdiction under Section 634(b)(1)**

As this Court previously stated, "the Court can enjoin the SBA when the Administrator exceeds her authority or uses her discretion arbitrarily and capriciously." Although the Respondent urges this Court to follow the *Hidalgo* case, it is salient to note that *Hidalgo* is non-binding on this Court and involved a denial of a PPP *loan* and not a *grant*, to an applicant that was in Chapter 11 bankruptcy. Again, the Respondent attempts to distract this Court from the by conflating the terms "loan" and "grant." *Hidalgo* did not involve the Emergency EIDL Grant program, or the administration thereof. *Hidalgo* involved the inner workings of the agency, not the enactment of the clear language of a statute, as is the case here.

The Petitioners do not seek "a wholesale reworking of the entire process by which EIDL Advances are processed" nor do they seek to move "to the front of the line" as claimed by the Respondent. The Emergency EIDL Grant process, is quite simple - a $10,000 Grant, made to every applicant that requests such grant, and self-certifies that it is eligible. It is the SBA itself that imposed an additional arbitrary and capricious method of metering the grants that Congress had

not intended the SBA to consider.  The Petitioners simply want their applications processed in the order received, not to jump to the front of the line.

### III.    SBA's Action is not "Committed to Agency Discretion by Law"

To be entitled to deference, the agency's construction must also be a reasonable interpretation of the statute. There is no reasonable interpretation of the CARES Act §1110 that would lead to the Respondent having discretion to tether the amount of the Emergency EIDL Grant to the number of employees of the applicant. Such language does not exist in the statute, and any such reading would result in the Administrator acting in a Legislative capacity. The APA provides that courts must "hold unlawful and set aside" agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" 5 U.S.C. §706(2)(C).

Again, the Respondent attempts to conflate the terms "grant" and "loan" and urges this Court to apply case law related to a long-existing *loan* program to a brand-new *grant* program. The Emergency EIDL Grant program is a new program enacted by CARES, separate and distinct from the EIDL Loan program. The cases cited by Respondent relate to the SBA Loan programs and cannot be applied to this new Grant program. The Petitioners are not arguing the SBA's discretion in the formula utilized to make EIDL *Loans* (50% of 2019 Net Profits) but rather the SBA's arbitrary tethering of the Emergency EIDL Grant to the number of employees of the applicant to decide the amount of the *grant*.  Changing the express language of the CARES Act §1114(e)(1) from "in the amount requested by such applicant" to "$1,000 per employee" is not an "interpretation" of the Act's language, nor is it "reasonable." Therefore, the SBA policy is in excess of statutory authority under 5 U.S.C. §706(2)(C).

### IV.    The Policy is Arbitrary and Capricious (Section 706(2)(A))

Tying the amount of the Emergency EIDL Grant to the number of employees is neither rational or reasonable. There is no relation whatsoever between the number of employees and the

economic injury or need of the applicant. As previously held by this Court, "nothing in § 1110 of the CARES Act reveals Congress intended to tether the EIDL grants to the number of employees." (Doc. 21, p. 10).  Also, as previously stated by this Court, "[t]he economic loss of a business cannot be reasonably measured by, or directly related to, the number employees of that business. A small business with one or two employees may need a $10,000 Emergency EIDL Grant as much as, if not more than, a small business with ten or 499 employees." (Doc. 21, p. 10).

The contours of "arbitrary and capricious" review are clearly articulated in *Motor Vehicle Manufacturers Association v. State Farm Auto Mutual Insurance Co.,* 463 U.S. 29 (1983). As explained in *State Farm*, "[n]ormally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider." *Id.* at 43. Nothing in the CARES Act indicates that Congress intended the SBA to consider the number of employees when disbursing the Emergency EIDL Grant. In fact, the CARES Act §1110(a)(2)(B) specifically provided that Emergency EIDL Grants would be provided to businesses "with *or without employees*" which clearly indicates that Congress expressly *did not* intend to tether the Emergency EIDL Grants to the number of employees. (CARES Act 1110(a)(2)(B)) (emphasis added).

In this case, there is no rational basis or connection whatsoever to tether the amount of the Emergency EIDL Grant to the number of employees of the applicant. By its own admission, Respondent used a completely arbitrary method to meter the Emergency EIDL Grants: "we needed to do *something* so that many more people would receive the funds." However, the "something" the Respondent chose - the number of employees - has no correlation to the economic loss or need of the applicant and is consequently arbitrary and capricious.

V.      **Lack of Publication Caused Harm to Petitioners**

The CARES Act §1114 affirmatively requires the Respondent to issue regulations for the administration of the small business assistance programs contained in the CARES Act, including

4

the Emergency EIDL Grant program, within 15 days of enactment. Only by issuing such regulations within 15 days could the SBA avoid the publication requirements of §553(b) of the APA. Despite the respondent's claims, an internal note "implementing" the $1,000 per employee rule, between two SBA employees, cannot seriously be proffered as publication.

While the non-binding decision in *Brennan* asserted that "[a]ny belabored rule-making process would have defeated the Congressional purpose of the EIDL Advance Program, that is, to assist small business owners with immediate financial relief during the COVID-19 pandemic", it was the SBA itself that instituted the arbitrary rule that required the rule-making process and publication procedures. *Brennan v. United States*, No. 4:20-CV-00505-KGB, 2020 WL 3980001 at n.2 (E.D. Ark. July 14, 2020). Had the SBA followed the CARES Act and clear intent of Congress and simply made the Grant "in the amount requested by such applicant", there would have been no need for a rule-making process at all, and the grant fulfillment process would have been far simpler and time efficient.

Agencies are required to publish rules so that the public has the opportunity to understand and participate in the rule making process. As explained by the Congressional Report R41546, "In an effort to ensure public participation in the informal rulemaking process, agencies are required to provide the public with adequate notice of a proposed rule followed by a meaningful opportunity to comment on the rule's content... The requirement under § 553 to provide the public with adequate notice of a proposed rule is generally achieved through the publication of a notice of proposed rulemaking in the Federal Register."

**VI.     Petitioners are Entitled to a Grant up to $10,000**

Respondent argues that SBA has no requirement to make grants of $10,000 to each applicant, and this Court "would be limited to, at most, providing a temporary injunction against using the $1,000 per employee policy for any further distributions." If this Court holds that the

SBA's actions were arbitrary and capricious, the SBA would be required to follow the express intent of Congress as opposed to their own rules of implementation. The CARES Act specifically allows each applicant to determine the amount of its grant, to a maximum of $10,000. The record is clear that each Petitioner has requested a grant of $10,000 yet has failed to receive that amount. If the SBA were required to make grants without applying its own arbitrary and capricious rule, the grant would have to be for the $10,000 amount requested by each Petitioner.

### VII.    Irreparable Harm Will Occur Without a Preliminary Injunction

Irreparable injury does not require a showing of "catastrophic" injury that would require a business to shut its doors. Each Petitioner has requested a $10,000 grant from the SBA and received less than that amount. By receiving less than $10,000, each Petitioner has suffered an irreparable injury. Petitioners are not entitled to money damages from the SBA due to sovereign immunity, and the EIDL Grant funds allocated by Congress have run out if not replenished. Therefore, each Petitioner has suffered an irreparable injury regardless of their individual declarations and regardless of the dollar amount of the individual harm.

Petitioners' Declarations have also cited the loss of customers and goodwill that they have already experienced. "The loss of customers and good will is an irreparable injury" *Se. Mech. Servs., Inc. v. Brody*, No. 8:08-CV-1151-T-30EAJ, 2008 WL 4613046 (M.D. Fla. Oct. 15, 2008). Many Petitioners have also asserted imminent danger of being permanently closed. "The loss or destruction of an entire business has widely been held to constitute irreparable harm, at least when the business has been in operation for some time." *Truglia v. KFC Corp.*, 692 F. Supp. 271, 279 (S.D.N.Y. 1988). "As a general matter, it is reasonable to infer that any small business, regardless of the services and/or products it provides, would have trouble surviving if forced to close its doors for two months followed by a limited, piecemeal reopening" *Camelot Banquet Rooms, Inc. v. United States Small Business Administration*, No. 20-C-0601, 2020 WL 2088637, p.29 (E.D. Wis.

6

May 1, 2020). To wait until Petitioners are out of business prior to granting relief is completely counter to the purpose of the Cares Act.

Petitioner's lack of an adequate remedy at law and would suffer irreparable harm without an injunction. Harm is irreparable if it "cannot be prevented or fully rectified by the final judgment after trial." *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045 (7th Cir. 2017). To show there is no adequate remedy at law, the plaintiff is not required to demonstrate that the remedy would be wholly ineffectual; the plaintiff must show only that any award would be seriously deficient as compared to the harm suffered. *Id.* at 1046. See *Camelot*, p. 25 and *DV Diamond Club of Flint, LLC v. United States Small Business Administration*, No. 20-CV-10899, 2020 WL 2315880, pp. 39-40 *(E.D. Mich. May 11, 2020)*. According to the Respondent, "As of July 15, 2020, [the SBA has] paid or obligated the entire $20 billion appropriation." Since there is not money left in the appropriations, and consequently no adequate remedy at law, the Petitioners have proven irreparable harm.

Additionally, as explained in *DV Diamond*, pp. 39-40, the "Plaintiffs would have no monetary remedy for such an exclusion because Defendants have sovereign immunity from any claim for monetary damages. As the federal district court explained in *Camelot*, 'the inability to obtain damages implies that any harm the plaintiffs suffer between now and the end of the case will be irreparable'".

### VIII.   Balance of Equities and Public Interest Favor a Preliminary Injunction

The entire CARES Act was written with the public interest in mind. As stated in the CARES Act preamble, "Purpose: Providing emergency assistance and health care response for individuals, families and businesses affected by the 2020 coronavirus pandemic." (Doc. 27, Exhibit A, ⁋ 23). Further, it is in the public interest that the 30.2 million small businesses in the US, which employ 58.9 million people - or nearly 40% of the workforce in the US - continue to

7

survive and reopen following the pandemic.  Enjoining the Respondent from continued actions of reducing and delaying the Emergency EIDL Grants designed to save small businesses, is in the public interest.

Even if the Court were to somehow consider potential harm to the Respondent, the balance still favors Petitioners. "To the extent that a defendant can show harm, this must be discounted by the degree that a plaintiff can show likelihood of success." *S.E.C. v. World Radio Mission, Inc.*, 544 F.2d 535, 541 (1st Cir. 1976).  "The more likely the plaintiff will succeed on the merits, the less the balance of harms need favor him." *Eli Lilly v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). As explained above, the "$1,000 per employee rule" is arbitrary and capricious under *State Farm*, and that alone shows the Petitioners are likely to succeed on the merits.

Further, where the Petitioner has demonstrated that it is likely to succeed on the merits, Respondent "face[s] a difficult task in justifying the non-issuance of a preliminary injunction." *F.T.C. v. Univ. Health, Inc.*, 938 F.2d 1206, 1225 (11th Cir. 1991). Petitioners have shown that public interest favors a preliminary injunction in this matter.

Dated:  August 6, 2020

<div style="margin-left:45%">

*/s/ Mark F. Warzecha*

JAMES IPPOLITI, Esq.
FL Bar No. 102674
MARK WARZECHA, Esq.
FL Bar No. 095779
JEFF IPPOLITI, Esq.
FL Bar No. 095608
SCOTT WIDERMAN, Esq.
FL Bar No. 585823
jim@uslegalteam.com
mfw@uslegalteam.com
jeff@uslegalteam.com
scott@uslegalteam.com
WIDERMAN MALEK P.L.
Attorneys for Petitioners
1990 W. New Haven Ave., Second Floor
Melbourne, FL 32904
Phone:  321-255-2332

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of the filing to all attorneys of record.

<div align="right">

*/s/ Mark F. Warzecha*
JAMES IPPOLITI, Esq.
FL Bar No. 102674
MARK WARZECHA, Esq.
FL Bar No. 095779
JEFF IPPOLITI, Esq.
FL Bar No. 095608
SCOTT WIDERMAN, Esq.
FL Bar No. 585823
jim@uslegalteam.com
mfw@uslegalteam.com
jeff@uslegalteam.com
scott@uslegalteam.com
WIDERMAN MALEK P.L.
Attorneys for Petitioners
1990 W. New Haven Ave., Second Floor
Melbourne, FL 32904
Phone:  321-255-2332

</div>