UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CELEBRATION LAW P.A. et al.,

    Petitioners,

v.                                                        Case No. 6:20-cv-665-Orl-37GJK

JOVITA CARRANZA,
ADMINISTRATOR OF THE UNITED
STATES SMALL BUSINESS
ADMINISTRATION,

    Respondent.
_____

**ORDER**

Petitioners move for a preliminary injunction. (Docs. 26, 27 (collectively, "**PI Motion**").) Respondent opposed (Doc. 33), and Petitioners replied (Doc. 38). The Court held a hearing on August 13, 2020. (Doc. 39 ("**Hearing**").) After considering the parties' filings and oral arguments, the Court denied the PI Motion at the Hearing, finding Petitioners failed to establish a substantial likelihood of success on the merits. (*See id.*) This Order memorializes the Court's ruling.

                **I.**        **BACKGROUND**[1]

Petitioners, thirty-two small businesses, return for a second attempt at preliminary injunctive relief stemming from the Small Business Administration's ("**SBA**") conduct in carrying out Section 1110 of the Coronavirus Aid, Relief, and Economic Security Act

---

[1] More information on the facts underlying this case appears in the Court's order denying Petitioners' first preliminary injunction request. (*See* Doc. 21.)

-1-

("**CARES Act**"). (*See* Docs. 25–27.) Section 1110 of the CARES Act, titled "Emergency EIDL grants," provides:

> (1) **In general**
> During the covered period, an entity included for eligibility in subsection (b), including small business concerns, private nonprofit organizations, and small agricultural cooperatives, that applies for a loan under section 636(b)(2) of this title in response to COVID-19 may request that the Administrator provide an advance that is, subject to paragraph (3), in the amount requested by such applicant to such applicant within 3 days after the Administrator receives an application from such applicant.
>
> (2) **Verification**
> Before disbursing amounts under this subsection, the Administrator shall verify that the applicant is an eligible entity by accepting a self-certification from the applicant under penalty of perjury . . . .
>
> (3) **Amount**
> The amount of an advance provided under this subsection shall be not more than $10,000.

15 U.S.C. § 9009(e)(1)–(3). Businesses can use EIDL grants to provide paid sick leave to employees unable to work due to COVID-19, maintain payroll to retain employees, and make mortgage or rent payments, among other things. *Id.* § 9009(e)(4). Congress appropriated $20 billion for EIDL grants, and the CARES Act affords the SBA "[e]mergency rulemaking authority" for distributing the funds. *Id.* §§ 9009(e)(7), 9012.

Petitioners' first attempt at a preliminary injunction was with their claim for mandamus relief. (Docs. 1, 6, 7.) Petitioners argued § 1110 required Respondent to provide EIDL grants in the amount requested by the applicants—$10,000 for each Petitioner—within three days, which Respondent failed to do. (Doc. 1, ¶¶ 5–8, 72, 80, 86, 89–90, 101–102, 105.) Petitioners sought a preliminary injunction compelling Respondent to comply with the CARES Act and immediately provide the requested $10,000 EIDL

grants. (Docs. 6, 7 (collectively, **First PI Motion**")).) In denying the First PI Motion, the Court found despite the no-injunction language in § 634(b)(1) of the Small Business Act, injunctive relief is available against Respondent when she exceeds her lawful authority or exercises her discretion arbitrarily and capriciously. (Doc. 21, pp. 4–7.) But the Court held Petitioners weren't entitled to a preliminary injunction because they failed to establish a substantial likelihood of success on their mandamus relief claim as the CARES Act doesn't impose a clear, non-discretionary duty on the SBA to award grants in the requested amount within three days. (*Id.* at 8–11.)

Undeterred, Petitioners maintain § 1110 of the CARES Act requires Respondent to provide EIDL grants of up to $10,000 in the amount requested by the applicants. (Doc. 25, ¶¶ 5–8, 60, 67, 73, 75–76; Doc. 27, pp. 7–10; Doc. 27-1, ¶ 22–25.) But this time Petitioners challenge the SBA's rulemaking in distributing the appropriated funds for EIDL grants under Administrative Procedure Act ("**APA**"). (Doc. 25, ¶¶ 77–80, 82–103; Doc. 27, pp. 7–13.) Petitioners allege Respondent violated the APA in implementing the "$1,000 per employee rule": small businesses can receive EIDL grants of $1,000 per employee up to $10,000, or $1,000 if no employees ("**Per Employee Rule**"). (Doc. 25, ¶¶ 69, 77–80, 82–103; Doc. 27, pp. 7–12; *see also* Doc. 33-1, p. 23.) The Per Employee Rule was first stated in an April 7, 2020 memorandum to the SBA's Chief Financial Officer. (Doc. 33-1, pp. 19, 22–23, 29.) The SBA also explained the Per Employee Rule to applicants, noting the purpose was "[t]o ensure that the greatest number of applicants can receive assistance during this challenging time." (Doc. 25, ¶ 69; Doc. 25-1, p. 30.)

Many members of Congress wrote to Respondent objecting to the Per Employee

-3-

Rule—some stating the limitations on grant amounts were "arbitrary," others stating the applicant determines the amount, and still others stating Congress intended the grants be $10,000—and demanding the prompt provision of EIDL grants. (Doc. 25, ¶¶ 61, 64, 66, 68, 70; Doc. 25-1, pp. 6–28; Doc. 27, pp. 11–12; Doc. 33-1, pp. 9–23.) Respondent testified before the House Small Business Committee on July 17, 2020 about the Per Employee Rule, explaining the rule wasn't arbitrary and was implemented so the greatest number of small businesses would receive EIDL grants given the number of applicants. (Doc. 33-1, pp. 29, 40); *see also* Treasury Secretary Mnuchin and SBA Administrator Carranza Testify on PPP, YouTube, at 1:51:24–1:52:15 (July 17, 2020), https://youtu.be/UHbHPs9Jn5w [hereinafter Congressional Testimony]. To date, the SBA has approved 5,781,390 small business applicants to receive EIDL grants and has paid or obligated the entire $20 billion appropriation—had each applicant received $10,000, only 2 million applicants would have received a grant.[2] (Doc. 33-1, pp. 29, 37–38, 40; *see also* Doc. 25-1, p. 32.)

Petitioners sued Respondent for multiple APA violations related to the Per Employee Rule: (1) Respondent failed to follow the APA's publication and notification requirements; and (2) Respondent exceeded her authority as the rule is arbitrary and capricious. (Doc. 25, ¶¶ 81–103; *see also* Doc. 27, pp. 8–13.) Petitioners ask the Court to void the Per Employee Rule and compel Respondent to immediately issue Petitioners the full $10,000 as requested. (Doc. 25, p. 22.) Petitioners also seek a preliminary injunction

---

[2] A small amount of funds has been returned to the SBA, and the SBA is determining what to do with those funds. (Doc. 33-1, p. 29.)

enjoining Respondent from using the Per Employee Rule and requiring her to provide Petitioners the requested $10,000. (*See* Doc. 27.) Briefing and oral argument complete (Docs. 26, 27, 33, 38, 39), the PI Motion is ripe.

## II. LEGAL STANDARDS

To obtain a preliminary injunction, the movant must establish: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation omitted). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Forsyth Cty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (citation omitted).

## III. ANALYSIS

As stated at the Hearing, although the Court has continued reservations about the SBA's use of the number of employees as a metric for determining EIDL grant amounts, Petitioners aren't entitled to preliminary injunctive relief because they failed to establish a substantial likelihood of success on their APA claim. Below are two main reasons why.

### A. Injunctive Relief Against the SBA

First, Petitioners failed to establish there's a substantial likelihood they can show the requested injunctive relief would not interfere with the SBA's internal operations. Section 634(b)(1) of the Small Business Act says no injunction shall be issued against the

SBA Administrator. 15 U.S.C. § 634(b)(1). In denying the First PI Motion, the Court found this no-injunction language isn't a complete bar against enjoining the SBA—injunctive relief must be available against the Administrator if she exceeds her authority or exercises her discretion arbitrarily and capriciously. (Doc. 21, pp. 4–7.) Further, one factor courts consider in enjoining the SBA is whether the injunction would interfere with the SBA's internal agency operations. (*See id.* at 4, 7 n.5 (citing *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1057 (1st Cir. 1987)).) As injunctive relief is available against the SBA in limited circumstances (*id.* at 4–7), at issue is whether this is one of those circumstances.

There's a good chance Petitioners' requested injunctive relief would interfere with the SBA's internal agency operations. Petitioners ask the Court to enjoin the SBA from using the Per Employee Rule and instead award Petitioners the $10,000 they requested. (*See* Doc. 27, pp. 34–35.) This request differs from other preliminary injunctions issued against the SBA. For example, in *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, No. 20-C-0601, 2020 WL 2088637 (E.D. Wis. May 1, 2020), the court enjoined the SBA from excluding the plaintiffs from the Paycheck Protection Program because they feature erotic dance entertainment. *See id.* at *1. There, the court found the injunction wouldn't "interfere with the agency's internal operations" because "[u]nder the injunction the plaintiffs seek, the SBA would have to do no more than process the plaintiffs' loan applications in the same manner that it processes the applications of other small businesses." *Id.* at *4. Not so here. Petitioners don't claim they were unconstitutionally excluded from receiving EIDL grants or simply seek equal treatment; instead, Petitioners want to overhaul the current system and require Respondent to provide Petitioners

grants in the amount requested. (*See* Docs. 25–27.) Given the SBA's use of the Per Employee Rule in awarding and obligating all EIDL grants to date and the near-depletion of the EIDL grant appropriation, requiring Respondent to stop using the Per Employee Rule and instead award each Petitioner $10,000 would likely interfere with the SBA's internal operations. (*See* Doc. 33-1, pp. 29, 37–38, 40; *see also* Doc. 25-1, p. 32.) So Petitioners haven't shown the requested preliminary injunction is appropriate. *Cf. Camelot Banquet Rooms*, 2020 WL 2088637, at *4; *Ulstein Mar., Ltd.*, 833 F.2d at 1057.

### B. Arbitrary and Capricious

Second, Petitioners failed to establish there's a substantial likelihood they can show Respondent exceeded her authority in implementing the purportedly arbitrary and capricious Per Employee Rule. Under the APA, courts must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §§ 706(2)(A), (C). A court may find a rule is arbitrary and capricious where the agency: (1) "relied on factors which Congress has not intended it to consider"; (2) "entirely failed to consider an important aspect of the problem"; or (3) "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Alabama-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1254 (11th Cir. 2007) (citation omitted). But a court may not "substitute [its] judgment for that of the agency." *Id.* The standard is deferential: if the court "finds a reasonable basis for the agency's action, the court should stay its hand even though it might . . . have

reached a different conclusion." *Latecoere Intern, Inc. v. U.S. Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994) (citation omitted).

Petitioners argue the rule is arbitrary and capricious because Congress intended the SBA award EIDL grants based on the amount requested by the applicants, not the applicant's number of employees. (Doc. 27, pp. 21–22; Doc. 38, pp. 6–7.) This fails for two reasons at this preliminary stage. For starters, the Court already rejected Petitioners contention that Respondent must provide EIDL grants in the amount requested by applicants up to $10,000. (Doc. 21, pp. 8–10.) Section 1110(e) of the CARES Act says only that applicants *may request* the SBA provide up to $10,000; it doesn't require the SBA to provide $10,000 or any amount requested. (*Id.* at 9.) So the SBA enjoys discretion in determining EIDL grant amounts up to $10,000. (*Id.* at 9–10.)

Additionally, the Court cannot say on this record there's a substantial likelihood that relying on the number of employees was unreasonable or arbitrary and capricious given the goals of the CARES Act and the SBA. The aim of the CARES Act "is to extend a lifeline to *all* small businesses, not to promote or encourage any specific subset of small businesses." *Camelot Banquet Rooms*, 2020 WL 2088637, at *9 (emphasis added). Likewise, the Small Business Act's purpose "is to strengthen the economy by assisting *all* small businesses." *Id.* (emphasis added); *see also* 15 U.S.C. § 631(a). Consistent with those goals, the SBA's stated reason for the Per Employee Rule was to ensure the greatest number of small businesses receive assistance considering the number of applicants and its limited funds. (Doc. 25, ¶ 69; Doc. 25-1, p. 30; Doc. 33-1, p. 29; Doc. 33-1, p. 40); *see also* Congressional Testimony, at 1:51:24–1:52:15. True, the CARES Act doesn't tether EIDL

grant amounts to an applicant's number of employees, but providing sick leave to employees and maintaining payroll are allowable uses for EIDL grants. *See* 15 U.S.C. § 9009(e). And while the number of employees isn't the most precise metric for determining the appropriate EIDL grant amount, as Respondent conceded (*see* Doc. 39), the question for the Court isn't whether the rule was best: the question is whether it was reasonable. *See Latecoere Intern, Inc.*, 19 F.3d at 1356. Without a full administrative record revealing the factors Respondent considered in creating the Per Employee Rule, the Court cannot now say there's a substantial likelihood it is unreasonable or arbitrary and capricious. *Cf. Alabama-Tombigbee Rivers Coal.*, 477 F.3d at 1254.

What's more, Petitioners' proffered alternatives to the Per Employee Rule are also flawed, undermining their APA claim. Petitioners first suggested the SBA should have provided EIDL grants in the amount requested by the applicant. (*See* Doc. 39.) But the Court rejected Petitioners' interpretation of § 1110 that strips Respondent of discretion and requires grants in the amount requested. (*See* Doc. 21, pp. 8–10.) Second, Petitioners asserted Respondent could have provided all applicants $10,000 grants. (*See* Doc. 39.) But this wasn't required and would have reduced the number of grant recipients given the limited funds. *Cf.* 15 U.S.C. § 9009(e). Last, Petitioners argued Respondent could have based the EIDL grant amount on a percentage of the actual economic loss suffered by the applicant. (*See* Doc. 39.) But like the issue with the Per Employee Rule, the CARES Act doesn't state the EIDL grant amount should be tethered to an applicant's economic loss. *See* 15 U.S.C. § 9009. This could also delay delivery of EIDL grants and thus defeat the purpose of providing rapid, emergency relief. (*See* Doc. 39); *cf. Camelot Banquet Rooms*,

2020 WL 2088637, at *9. While other possible metrics exist for determining EIDL grant amounts, it's unclear whether those are the only reasonable and permissible ways for Respondent to exercise her discretion.

Ultimately, although couched in APA terms, what Petitioners seek is a preliminary injunction requiring Respondent to immediately provide the $10,000 EIDL grants they requested. (*See* Doc. 27, pp. 34–35.) But mandatory injunctions that force a party to act, rather than maintain the status quo, involve a "particularly heavy burden." *See OM Grp., Inc. v. Mooney*, No. 2:05CV546FTM33SPC, 2006 WL 68791, at *8 (M.D. Fla. Jan. 11, 2006) (citations omitted). Mandatory preliminary injunctions "should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party." *Phillips v. Epic Aviation, LLC*, No. 2:13-cv-410-FtM-29DNF, 2014 WL 1092458, at *2 (M.D. Fla. Mar. 19, 2014) (citation omitted). Petitioners haven't shown they are substantially likely to succeed on their APA claim, much less shown the facts and law "clearly" favor them. *See id.* So Petitioners aren't entitled to the requested preliminary injunctive relief.[3]

## IV. CONCLUSION

It is **ORDERED AND ADJUDGED** that Petitioners' Motion for Preliminary Injunction (Doc. 26) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 19, 2020.

---

[3] Because Petitioners failed to establish a required element for a preliminary injunction—substantial likelihood of success on the merits—the Court need not address the other elements. *See Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001).



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record